CASE 48—ACTION TO RECOVER LAND—June 22.

# Thomas v. Sweet.

APPEAL FROM MASON CIRCUIT COURT.

JUDGMENT FOR DEFENDANT AND PLAINTIFF APPEALS. AFFIRMED.

VENDOR AND PURCHASER—FAILURE OF CONSIDERATION—INNOCENT PUR-
CHASER—ESTOPPEL.

Held: 1. Where defendant conveyed land with general warranty
to plaintiff at the request of P., to whom defendant had executed
a title bond for the land, and who had, for a valuable consid-
eration, subsequently sold the land to plaintiff, in an action
by plaintiff to recover the land defendant was entitled to have
his deed to plaintiff canceled, plaintiff being merely the assignee
of P.'s equity, and standing in his shoes, and it appearing that
there was a total failure of consideration by reason of the fact
that the supposed tract of land which P. was to convey to de-
fendant had in fact no existence.

2. The fact that defendant advised plaintiff to purchase the land
from P. does not operate as an estoppel, as plaintiff had notice
of a stipulation of the title bond executed by defendant that
defendant who was then in possession of the land, should re-
main in possession until a certain time in the future, when he
was to receive title to and possession of the land which P.
was to convey to him, and that, unless he should receive such
title and possession, the contract was to be "null and void."

CHIEF JUSTICE PAYTER AND JUDGES GUFFY AND WHITE DIS-
SENTING.

E. L. WORTHINGTON AND A. E. COLE & SON, ATTORNEYS FOR AP-
PELLANT.

On April 3, 1896, appellee and his wife conveyed to appellant
by deed of general warranty, a tract of land in Mason county,
Kentucky, containing about 120 acres. On November 2, 1896,
appellant brought this suit in ejectment against appellee to re-
cover possession of said land. Appellee answered, and by
counterclaim asked to have his deed canceled on the ground
that it was obtained by *fraud* from him, and that the consider-
ation therefor had failed. On his motion the case was trans-
ferred to equity, proof taken and on final hearing the court

below granted to appellee the relief sought, to-wit, the can-
cellation of said deed.  From this judgment appellant prose-
cutes this appeal.

The occurrences that led up to the making of this deed were,
in brief, these:

In December, 1895, one, J. Win Parker, claiming to act as
agent for one, Sewell, traded with appellee some Missouri land
for appellee's land, the same that was afterwards deeded to ap-
pellant.  Pursuant to said contract appellee signed a deed con-
veying his land to Sewell and delivered it to Parker.  That deed
was not put to record.  Thereafter Parker proposed to trade said
farm he had gotten from appellee to appellant for some real
estate that appellant owned in Lewis county, Kentucky.  On
February 14th a contract to that effect was made between
Parker and appellant, the latter agreeing to pay $850 to boot.
He paid $100 in cash on said day and $490 on February 19th,
leaving a balance of $260, the amount of a building association
mortgage on it, and on said date, February 19th, he conveyed
to Browning and wife (daughter and son-in-law of Parker) the
Lewis county land by Parker's direction.  Prior thereto appel-
lant had made inquiries of appellee in regard to the land and ap-
pellee showed him over the farm and encouraged him to make
the trade with Parker.  By two deeds dated March 6 and April
3, 1896, Parker conveyed to appellee the Missouri land.  Ap-
pellee had previously gone out to Missouri and gone on the land
with Parker and looked at it.  On April 3, 1896, appellee, by
Parker's direction, deeded the land he had previously sold to
Parker, direct to appellant, and on same day wrote to appellant
saying that Parker had fully complied with his contract with
him.  Appellant accepted this deed as a compliance with Par-
ker's contract to maake him a title and thereafter paid the
balance of the cash payment, $260, to the building association.
Afterwards appellee discovered that the land described in Par-
ker's deed to him was not located in Taney county, Missouri,
at all, as stated in said deed; that in fact there was no land in
Taney county answering to that description.  He therefore
claimed that Parker had practiced a fraud upon him in deed-
ing land to him as lying in Taney county, Missouri, when there
was no such land there, and on that ground asserts a right to
have his deed to appellant rescinded.

We claim that there is one simple question involved in this
case, which is:  Has appellee any equitable rights *against ap-
pellant* to have his deed to appellant of April 3, 1896, cancelled?
If he has not, it matters not what may be his equitable rights

Thomas v. Sweet.

·against Parker or Sewell. Appellant's title is derived from the deed to him from appellee and not a title derived from Parker. If appellee had conveyed to Parker and then Parker had conveyed to appellant, and appellee had an equity against Parker to have the deed to him set aside for fraud that equity would destroy appellant's title. But no such case is presented here.

### POINTS AND AUTHORITIES.

1. A deed of general warranty estops the grantor to dispute the title of the grantee. 11 Am. & Eng. Ency. of Law (2d ed.), p. 402; Bigelow on Estoppel, 332.

2. The destruction of a deed by the consent of the grantor and grantee both, in its effects, operates just like a reconveyance to the grantor. 2 Jones on Real Property, sec. 1259.

3. The doctrine of equitable estoppel, or estoppel *in pais*, is often invoked to protect an otherwise invalid title against asault from the legal title holder. It is never needed by the holder of a perfect title to protect that title against assault from somebody else.

4. The equitable doctrine of *bona fide* purchaser for value without notice is invoked only by a person whose title is defective. It is not a rule of property, but merely a rule of *inaction*, and the holder of a perfect title never needs to invoke it. 2 Pomeroy's Equity, sec. 739-743.

5. It is arguing in a circle to say that appellant's title is defective because appellee has an equity to have his deed cancelled. That is assuming the very question in dispute. Taylor v. Russell, 10 Eng. Ruling Cases, 552.

6. Cancelling an executed contract is an exertion of the most extraordinary power of a court of equity, and it ought not to be exercised except in a clear case. Atlantic Delaine Co. v. James, 94 U. S., 207; Neel v. Neel, 16 Ky. Law Rep., 193; U. S. v. Maxwell Land Grant Co., 121 U. S., 325; Bispham on Equity, sec. 475.

7. A deed can not be rescinded or cancelled at the suit of the grantor on the ground that he was induced to execute it by the fraud of a third party, unless the grantee participated in or connived at the fraud. This doctrine is applicable alike to executory and executed contracts. 1 Bigelow on Fraud, 253; Kerr on Fraud and Mistake, 339; Pollock on Contracts, 530 (Wald's 2d ed.); Lawson on Contracts, sec. 236; Fairbanks v. Snow, 145 Mass., 153; Nash v. Minnesota Title Co., 163 Mass., 574; Compton v. Bunker Hill Bank, 96 Ill., 301; Fightmaster v. Levi, 13 Ky. Law Rep., 412; Lee v. Vaughn, 1 Bibb, 235; Morrison v.

Thomas v. Sweet.

Clay, Hardin, 431; Wheeler v. Traders' Deposit Bank, 21 Ky. Law Rep., 1416.

8. Notice to affect appellant's rights must be notice, not of Parker's *contract* with appellee, but of Parker's *fraud* on appellee. Morrison v. Clay, Hardin, 421.

9. A person is not responsible for the fraud of another, unless that other is his agent or servant, and the fraud was committed for the master's benefit, and not in pursuit of the agent's own private ends. Pollock on Contracts, 531 (Wald's 2d ed.); 12 Eng. Ruling Cases, 306.

10. A want or failure of consideration is no ground for setting aside a deed. Nothing but fraud or palpable mistake is ground for rescinding an executed contract. 3 Washburn on Real Property, 391; Neel v. Neel, 16 Ky. Law Rep., 193; Simpson v. Hawkins, 1 Dana, 305; Buford v. Guthrie, 14 Bush, 695.

11. There is one exception, or apparent exception, to this doctrine, where the consideration is the agreement of the grantee to support and take care of, or render other *continuous* services to the grantor. In which case the deed may be canceled for the *willful* refusal of the grantee to render the services. Jenkins v. Jenkins, 3 Mon., 327; Scott v. Scott, 3 B. Mon., 2; Reeder v. Reeder, 89 Ky., 529; Cash v. Cash, 19 Ky. Law Rep., 686; Bailey v. Herron, 20 Ky. Law Rep., 1957; Lane v. Lane, 21 Ky. Law Rep., 9.

12. If those cases do establish a real exception to the doctrine laid down in *Neel v. Neel*, 16 *Ky. Law Rep.*, 193, and other like cases, the present case is not within the reason or spirit of the exception.

13. The consideration for the deed in question was the obligation of Parker to make appellant a title to the land in controversy, for which appellant had paid him. That consideration has not failed. Morrison v. Clay, Hardin, 421; McCoun v. Delaney, 2 Bibb, 440; Copeland v. Curry, 1 Bibb, 176; Copeland v. Fugate, 1 Bibb, 178; Davis v. Payton, Hardin, 427; Harrod v. Black, 1 Duvall 180.

A. M. J. COCHRAN, ATTORNEY FOR APPELLEE.

The fundamental facts out of which this action has arisen are these:

1. Prior to December 19, 1895, appellee conveyed his farm in Mason county, Kentucky, and agreed to deliver the Morgan notes to Parker as agent for Sewell for a certain consideration not then received, and on that date a writing was executed setting forth, in detail, what that consideration was, and providing that if

Thomas v. Sweet.

Parker did not comply with his part of the contract it was to be null and void, and appellee was still to hold his property.

2. On February 14, 1896, Parker made a written contract with appellant for the sale of appellee's farm to him for a consideration therein specified, and thereafter in the same month appellant paid him $590 of the money consideration agreed on, and delivered to him a deed for the Burtonsville, Lewis county, property, possession of which appellant retained and still has. This contract between appellant and Parker did not include the three Morgan notes, and so far as this record shows there was no contract between them with reference to said notes.

3. At this time appellee was still in possession of his farm and had received no part of the consideration which he was to have in the trade between him and Parker.

4. Appellant, in law if not in fact, knew this, and that appellee's trade with Parker was void, if he did not receive it with his money and deed.

5. Subsequent to this, in March, 1896, and on April 3, 1896, Parker delivered to appellee deeds for 400 and 140 acres of land purporting to be in Taney county, Missouri, one of the conveyances being supposed to be a part of the consideration he was to receive, and the other being supposed to be security for, or in satisfaction of, the rest thereof.

6. There was no such land in existence, and notwithstanding such conveyances, appellee received no part of said consideration.

7 and 8. Appellee believed in good faith that he had received the consideration stipulated for, and so believing at the request of Parker, and to save the expense of recording two deeds, on April 3, 1896, conveyed his farm to appellant and delivered the Morgan notes to him, such conveyance not being in pursuance to any contract of sale between appellant and appellee, but in pursuance of a contract between appellee and Parker, which Parker had assigned to appellant.

9. On same date appellee delivered to Parker a written certificate to the effect that Parker had complied with his contract with appellee in full, which certificate Parker subsequently delivered to appellant.

10. Subsequently to this appellant paid off a building association debt of appellee's which was a lien on the farm, but before he did so, Parker turned over to appellant in money and the Fannin debt an amount equal to the sum so paid by him. Appellee having theretofore turned over to Parker said Fannin debt and personal property sufficient to satisfy said building association debt.

Thomas v. Sweet.

11. The transaction, so far as Parker was concerned, was a fraud practised both on appellee and appellant.

12. Appellant was in no way misled by any statement or action on part of appellee in parting with his property, and appellee was guilty of no conduct which appellant can claim should estop him from setting up the real truth as against appellant. He trusted solely. to Parker in the transaction, and was not led to change or alter his position by anything said or done or omitted to be said or done by appellee.

We submit that the evidence justifies us in claiming that these are the facts of this case, and further that the mere statement of them is sufficient to lead to the conclusion that appellee was entitled to his farm, and the Morgan land back from appellant, and that the judgment appealed from should be affirmed.

### SUMMARY OF AUTHORITIES.

1. The following authorities relied on by appellant's counsel have no application to this case: Fairbanks v. Snow, 145 Mass., 153; Nash v. Minnesota, 163 Mass., 574; Compton v. Bunker Hill Bank, 96 Ill., 101; Fightmaster v. Levi, 13 Ky. Law Rep., 412; Lee v. Vaughn, 1 Bibb., 235; Morrison v. Clay, Hardin, 421; Wheeler v. Traders', &c., Bank, 21 Ky. Law Rep., 1416, because Parker was not a third party to the transaction, within the meaning of those decisions. He was appellant's assignor or vendor, and all the rights appellant had were acquired through and under Parker.

2. Failure of consideration is good ground for cancelling a deed.

(1) Cases relied on by appellant's counsel, as laying down contrary rule, not in point, and do not lay down any such rule.

(2) Cases cited by appellant's counsel, as establishing an exception to any such rule, are not an exception, but establish the rule, as claimed by appellee.

(3) Authorities in addition to those just referred to, upholding rule, as claimed by appellee. Robinson v. Bright's Exr., 3 Met., 30; Bedal v. Sleth, 3 Mon., 290.

3. What necessary to constitute a person a *bona fide* purchaser for value without notice. Young v. Schofield, 132 Mo., 650.

4. Possession itself constitutes notice. Tate v. P. G. L. & D. Co., 37 Fla., 439.

5. Knowledge of facts sufficient to put a prudent man on inquiry constitutes notice. Conn. Mut. Life. Ins. Co. v. Smith, 117 Mo., 261; Anderson v. Blood, 152 N. Y., 285.

6. Notice before payment of purchase price is all that is necessary to keep one from being such a purchaser.

Thomas v. Sweet.

OPINION OF THE COURT BY JUDGE O'REAR—AFFIRMING.

Appellee, a farmer aged about 70 years, living in Mason county, Ky., and a "promotor,'" named J. Winn Parker, of Weston, Mo., in December, 1895, entered into a contract by which appellee agreed to exchange' his farm of some 120 acres, in Mason county, Ky., and notes held by him to the amount of $642.80 and interest against one J. W. Morgan (secured by lien on land in Mason county), to one E. Sewell, the principal for whom J. Winn Parker assumed to be acting, appellee to receive in exchange for his land and the Morgan notes a tract of land in Taney county, Mo., represented to contain 400 acres, and to have surrendered to him two notes of $150 each, theretofore executed by appellee to Parker, and to receive Parker's note for $500, due October 15, 1896. Appellee was then living on the farm proposed to be exchanged by him, and he continued to so reside until after the institution of this suit. It appears that Parker had formerly lived in Lewis county, Ky., adjacent to Sweet, and had, in the early part of 1895, been in Kentucky, when he sold to appellee, Sweet, an 80-acre tract of land in Taney county, Mo., taking for it Sweet's two notes for $150 each, due June, 1896, and June, 1897, respectively (the notes of that amount named above), and a jack at $500, making the consideration for the land $800. In October, 1895, appellee went to Missouri with Parker, to examine the land, and was shown by Parker as fine a body of land as one might covet, judging from its description given by appellee. Naturally, appellee was much pleased with his venture, and was an easy mark for the subsequent transactions. Soon Parker again appeared in Kentucky, and without much apparent difficulty, induced appellee to execute the contract first herein

named. Parker then set about selling this Kentucky pur-
chase. He visited appellant's store in Lewis county, not
far distant from the Sweet farm, and negotiations between
appellant and Parker ensued, resulting in a tentative trade,
"provided the title was all right," as appellant says, where-
by appellant was to buy of Parker the Sweet farm, and
give in exchange therefor a dwelling house and lot and
storehouse in the village of Burtonsville, Lewis county, and
$800 additional. This was about February 4, 1896. Ap-
pellant and Parker then went to and did examine the
Sweet farm, which was to appellant's satisfaction, where-
upon he paid Parker $109.50, a check for $100, and a check
for $490, making $690.50 of the $800. The last of these
payments was made February 19, 1896. When appellant
went with Parker to examine the Sweet farm, after view-
ing part of it, they went to appellee's residence to exam-
ine it. Of course, they were invited by appellee to stay for
dinner, it being near that hour, and after and at dinner
there occurred certain conversations that are relied upon
by the parties respectively as constituting estoppel and
notice. That is, appellant asserts that then appellee
told him that he (appellee) had traded his farm to Parker
for a farm in the West, and was loud in his praise of his
Western acquisition; and also that appellee advised appel-
lant to buy the farm now in dispute—the Sweet farm. On
the other hand, appellee claims that on his initial visit ap-
pellant learned of such facts as in law put him upon inquiry
and notice, if he did not, indeed, acquire sufficient actual
knowledge of the terms of the contract between appellee
and Parker, to cut off appellant's claim of being a *bona
fide* purchaser, for value, and innocent, or without notice.

From the proof it is made satisfactorily clear that appellee did at that time feel satisfied with his exchange, was anxious to consummate it, and urged appellant to buy this farm. We are equally well satisfied from the proof that on that occasion appellant learned of the terms of the contract between appellee and Parker, which included the proviso that appellee was to retain possession of his farm till October 15, 1896, when he was to be paid the $500 cash, receive his two $150 notes, and receive title and possession to the 400 acres of Taney county, Mo., land; and that, unless these conditions were all performed, the contract between appellee and Parker "was to be null and void." Neither appellant nor appellee seemed to question Parker's honesty, and both seem to have been equally and surprisingly credulous in believing his representations. Appellant shows by his testimony that he regarded the transaction between appellee and Parker with strange indifference,—undoubtedly under the belief that he was not legally concerned in it,— and for that reason, evidently, failed to take that careful note of its details and conditions evidenced by the character of his testimony; although it is pretty conclusively shown that at some period of the transaction, and within a short time of the date when the possession was due him under the Parker contract, he realized that appellee was being or had been "swindled," as he expressed it, but, presumably under the same idea of nonliability, claiming he "was an innocent purchaser." After appellant had bought this land from Parker, and had paid him the $590, and conveyed the Lewis county property to Parker's daughter and her husband (though appellant still retained possession of it), Parker induced appellee to make appellant a deed for his farm in Mason, and to deliver to appellant the Morgan notes. This was on April 3, 1896. These notes

were subsequently surrendered to Morgan in considera-
tion of his conveying appellant the land upon which they
were a purchase-money lien, 22.67 acres adjacent to ap-
pellee's farm. Notwithstanding appellee's deed to appel-
lant, it was understood by appellant that appellee had
the right to hold the possession of the farm till October 15,
1896. From the date of this conveyance till within a few
days of October 15, 1896, appellee undoubtedly treated
the farm as belonging ultimately to appellant, believing
that he would, at the date he surrendered his place, receive
the possession of the 400-acre plantation in Missouri. Par-
ker even was to furnish a car to move appellee, his family
and chattels, and to come after them; all for a guarantied
outlay of not exceeding $25. In March, 1896, Parker de-
livered to appellee a deed for 400 acres of land, described
as being parts of sections 5 and 9, township 21, range 19
W. of the fifth P. M., in Taney county, Mo., with covenants
of general warranty and seisin of fee-simple title thereto.
In satisfaction of the $500 note due appellee October 15,
1896, and to insure the delivery of the two $150 notes,
or, as Parker claims, in full satisfaction of all his obliga-
tions to appellee, Parker also conveyed appellee another
tract of 80 acres adjoining these other Taney county lands;
making, as appellee thought and said, "a square mile of
land" that he owned in that fertile region. On April 3,
1896, when the deed was made to appellant above men-
tioned, appellee and wife gave to Parker a writing called
a "certificate," showing that all liens had been paid on the
Sweet farm, except the mortgage named below, and that
appellee had no further claim against it. This paper sub-
sequently came to the hands of appellant. There was a
mortgage lien on appellee's land to a building and loan
association for $265.30, which he discharged by giving

Thomas v. Sweet.

Parker a horse, a colt, a cow and calf at $130, and land notes of one Fannin for about $130. This mortgage appellant subsequently paid, and, although the proof is not absolutely convincing, we feel authorized in adopting the chancellor's view in holding that Parker paid appellant $130 cash and gave him the Fannin notes to reimburse him for that outlay. Some few days before October 15, when the possession of these respective lands was due to be rendered, appellee, becoming suspicious all but too late, wrote Parker to meet him at Kansas City, and went out to locate his lands, and have them surveyed, and to take possession. Parker failed to respond. Appellee went to his house, but he refused to go along to see the land, claiming sickness in his family. Appellee then went to the county seat of Taney county, having his suspicions confirmed en route, and there definitely learned that there was no such land in existence as that described in his deed. Indeed, the facts are township 21 of range 19, Taney county, is but a fractional township, and it has no section 5, and no part of section 9, agreeing with the description in appellee's deed. In truth, appellee had simply been swindled as to this Missouri land venture. He then refused to surrender possession of the Mason county farm to appellant; hence this suit in ejectment by appellant. To the suit appellee pleaded in avoidance of his deed, which was set up and relied on in the petition: (1) The facts constituting the fraud of Parker in the transaction in which appellee agreed to and did convey his land, and that appellant had knowledge and notice of those facts, and therefore took the land subject to appellee's equities in the premises. (2) It was pleaded that there was an entire failure of consideration upon which the conveyance to appellant had been made, and therefore, in equity and conscience, appellant ought

not to hold that which he had acquired, but ought to return it to appellee. A rescission was prayed for in the answer, which was made a counterclaim. Issue being joined on these pleas, a large volume of proof was taken, from which we gather and find the statement of facts above. The cause, on appellee's motion, having been transferred to and tried in equity, the chancellor decreed a rescission of the conveyances, and adjudged appellant to execute and deliver to appellee a deed conveying both the original farm conveyed him by appellee and the land acquired from Morgan in satisfaction of his purchase-money notes. Hence this appeal.

It is the contention of the appellant that he was an innocent purchaser for value, and without notice of Parker's fraud; that it was the fraud of Parker that was the vicious element in the transaction, and that appellant was as ignorant and innocent of it as was appellee. Again, he argues that appellee stood by and saw him invest in the land, knowing that he was doing so, and urged or advised him to make the purchase; that, therefore, he is estopped now to question appellant's title. He further argues that appellee can not deny the effect of his warranty deed, and can not set up a superior equity to the legal title he has conveyed by his warranty deed. He also argues that there was not a failure, total or partial, of the consideration for the conveyance to him, for he says the consideration for his conveyance moved from appellant (being what he was induced to part with to Parker therefor), and it mattered not in law whether the consideration moved to the grantor or another, it was sufficient if the grantee had parted with a valuable asset in exchange for the conveyance. The case has been prepared with much care and skill, and argued with rare ability. To dispose of these

questions, it is first necessary that the legal relative posi-
tions of these parties be defined, and then constantly borne
in mind. The original contract concerning the land in liti-
gation was between appellee, Samuel Sweet, and E. Se-
well; the latter ostensibly represented by his agent, J.
Winn Parker, who presumably was authorized throughout
to do for his principal what he did. Appellee undertook to
convey the land and Morgan notes to Sewell, in considera-
tion that Sewell would convey or cause to be conveyed to
appellee title to 400 acres of land in Taney county, Mo.,
deliver to appellee the $500 note of J. Winn Parker, "Agt.,"
due October 15, 1896, and deliver to appellee two $150· notes
previously executed by him to Parker, and deliver to ap-
pellee the possession of the Missouri land on or before Oc-
tober 15, 1896; appellee to retain possession of his land till
then; and, "in case said Parker, as agent, fails to comply
with his part of this contract, then the contract is null
and void, and said Sweet is still to have and hold the farm
on which he now resides." This was a title bond,—an ex-
ecutory contract,—showing upon what conditions appellee
would convey to Sewell the title to the Mason county farm.
Appellee did nothing in that which could have mis-
led another dealing with Sewell, or his agent, Parker, with
reference to this land, to have believed that Sewell or Park-
er had any right or title to it, save such as was conditioned
upon Sewell's doing or causing to be done all the things
provided to be done for Sweet before the contract to convey
by Sweet became enforceable. Sweet continued in pos-
session of the farm, as stated before, not merely as tenant
of Sewell, but as owner, subject to the conditions of his
contract with Sewell. In this state of things, Sewell's
agent, Parker, proposes to appellant, W. H. Thomas, to
sell him the Sweet farm, or rather exchange it for certain

Thomas v. Sweet.

property of appellant's and a certain sum of money addi-
tional. This proposition being accepted, was equivalent
to Sewell's transferring to Thomas, Sewell's equity in the
contract of December of 1895, under which he was to ac-
quire Sweet's farm. Sewell (or Parker, which is the same
thing) could not, of course, convey to Thomas a greater
estate in the property than he (Sewell) had, nor could
Thomas acquire from Sewell a greater estate than Sewell
had. True, appellee, Sweet, might, by such conduct as
should operate upon the conscience, be estopped to deny
that Thomas took a greater title from Sewell than Sewell
had to convey; but, independent of the question of estoppel
for the present, Thomas merely acquired Sewell's equity
in the property. Thomas paid Sewell's agent, as consider-
ation for the transfer of that equity, the houses and lots
(valued at about $1,100 and about $700 in money. Whether
that was an unreasonable price for the transfer to him of
the equity, or whether it was a wise or unwise transaction
for Thomas, can not affect the legal question involved. He
bought Sewell's equity, and paid Parker for it. He then
"stood in Sewell's shoes." Independent of estoppel,—that
is, if Sweet had never been seen by Thomas, and had made
no representations whatever to Thomas concerning the
matter,—it doubtless would not be argued that Thomas
had any higher or better or other right to demand a con-
veyance of this land than Sewell had. Therefore (still
waiving the question of estoppel for the present) Thomas
would only be entitled to a conveyance of the Sweet farm
on the condition that Sweet first received a good title to
and full possession of the 400 acres of Missouri land by
October 15th, and received $500 cash and the possession
of his $300 notes by that date. If, then, there should have
been a failure of this consideration (a total failure,—as we

Thomas v. Sweet.

find there was), could Thomas have demanded and compelled the execution by Sweet of his part of the contract? If not, why not? Because the courts will not compel the execution or performance of a contract which it is inequitable to enforce. And it would, of course, be inequitable to compel Sweet to give up his farm to his vendee when the latter could not and would not pay him the agreed consideration for it. But it is here argued—and with much earnestness and skill—that the contract was executed so far as the conveyance by Sweet was concerned. It is said he had voluntarily executed his part of the contract by making and delivering to Sewell's assignee a general warranty deed to the land. Appellant argues that an executed contract can not be rescinded, except in that line of cases where the consideration is a "continuing one;" notably the cases known as "Support Cases," and illustrated especially in Scott's Heirs v. Scott, 3 B. Mon., 2, and Cash v. Cash (19 R., 686), (41 S. W., 579). We do not understand that the law recognizes such a limitation, or admits such an impotence. In a proper case the law will rescind even an executed contract, will restore the parties to their former position, when in good conscience one should not be suffered to maintain the advantage in the executed agreement. Thus, if one pays for an article represented to be of a certain quality, or fit for a certain use, which afterwards develops to be of a different quality, or unfit for the use represented, though the contract is executed, rescission may be had by the injured one where the foundation of the action is mistake or actual fraud. If one pays for an article under the representation and belief it has an existence, when it has not, though the contract is executed as to the payor, he may have rescission. It is not permitted in conscience

that one should retain the consideration and not give the subject of it.   Bish Cont., section 70; Robinson v. Bright's Ex'r, 3 Metc., 30; Bedal v. Stith, 3 T. B. Mon., 290; Lane v. Lane, 106 Ky., 530 (21 R., 9) (50 S. W., 857).

It is further argued for appellant that there could not be a failure of consideration in this case, because it is not necessary that the consideration should move to the grantor in the deed; it is sufficient if it moves from the grantee. The proposition stated is elementary, and not questionable. But we hold that the consideration for the execution of this deed was not Thomas' conveyances and payments to Parker, but Parker or Sewell's agreements to convey the Missouri land, and deliver the notes and cash to Sweet.   Thomas' conveyances and payments to Parker were the consideration for the assignment or transfer of Sewell's equities in the Sweet contract to Thomas.   Counsel for appellant cite and mainly rely on the case of Morrison v. Clay, Hardin, 430.   In that case, Morrison and Mansel entered into a contract with West, who claimed to be the inventor of a machine for cutting and heading nails, for the purchase of said invention, for which machine they agreed to give him $9,375.   West was to proceed at once to Washington, and obtain patents for his invention, and make due conveyances thereof to the vendees named.   Subsequently the three entered into a contract practically abrogating the first one, and becoming partners in the manufacture of the articles named; but Morrison and Mansel were to pay two-thirds of the original price, and that in making those payments they were to have credit for certain debts of West settled or to be settled by them with his creditors.   Peacock, Wrenshall & Co., for whom Mr. Henry Clay, the appellee in that action, was the agent or attorney, obtained a judgment for a considerable sum of money

against West and one Gutherie. Morrison thereupon
agreed with Mr. Clay to the settlement of this particular
debt, giving him therefor certain obligatory bonds of Mor-
rison to Clay in consideration that Mr. Clay, for his said
clients and principals, would release the judgment debt
above named, which was accordingly done. Thereafter
it was discovered that West had perpetrated a fraud on
Morrison, in that he was unable to obtain patents for his
machine on the ground that it was not patentable. Mor-
rison, having executed bond to Clay, as agent aforesaid,
for the payment of the sum agreed on to be in satisfaction
of the judgment debt of his principal, now sought to be re-
leased from these obligations under the facts recited above,
arguing that Clay was but the assignee of West, and oc-
cupied no better position than West could have occupied
under the contract. Mr. Hardin and Mr. Clay, for the de-
fence, contended that Clay was not the assignee of West,
but was an original contracting party with Morrison. We
quote from the argument of the distinguished counsel in
that case: "It is not upon mercantile principles that we
claim a right to recover, but upon the well-settled principles
of the common law that Clay, for Wrenshall, Peacock &
Co., gave to Morrison a valuable consideration for these
bonds. That consideration was the release of their judg-
ment against West and Gutherie. That release was given,
and was made complete, when those bonds were executed."
Again, they said: "Clay never entered into any contract
with West on this subject; nor does he claim under West,
and can not, therefore, be affected by any equity which may
extend to West." Chief Justice Edwards, delivering the
opinion of the court, held: "The consideration given by
Clay was the release or discharge of the judgment against
West and Gutherie, at Morrison's request; and the consid-

eration moving from Morrison to Clay for the release was the execution of the bonds in question." The court further intimated that, had Clay taken or derived his claim or title through West, he would have taken as assignee, and therefore subject to the defenses to that contract. In our opinion, the case just considered is clearly and easily distinguishable from the case at bar, and, instead of questioning, it virtually admits the principles here applied.

The estoppel pleaded must be unavailing to appellant. We can not determine from the record that appellee did or said anything prior to the execution of the paper of April 3d that could have misled and did mislead appellant, or that did induce him to part with his money or property to Parker; for it appears that appellant made his conveyances and paid all the money to Parker prior to April 3, 1896. True, he paid the $265 to the building association after that date, but, as we have found above, he received an equivalent consideration for that, the transaction amounting in reality to appellee's having paid that debt. To constitute an estoppel, appellee must have said or done something calculated to and that did cause appellant to part with his property or money, or change his position to his damage. No such fact is satisfactorily shown by the record, and therefore the plea can not prevail.

We do not deem it necessary to determine what notice attached to Sweet's actual occupancy of the premises when sold to appellant, as we find the sufficient fact that appellant had actual notice of the terms of the Sewell-Sweet contract of December, 1895, before he had parted with any property or money to Parker; and because we find the further fact, and have applied the rule of law, that appellant took under Sewell (or Parker) as vendee of his equity in the said contract of December, 1895, and was thereby con-

Thomas v. Sweet.

clusively charged with full notice of its terms and conditions in a controversy with Sweet, the other party to the contract. It follows from the foregoing that appellant was not "an innocent purchase for value, without notice" of Sweet's equities.

That one can not deny his own warranty deed, or set up a superior title to the one he has conveyed by such an instrument, is true. But that rule does not apply, of course, where the grantor in such a deed brings his appropriate action to vacate it, and have it cancelled by decree of court, because of fraud in its obtainment, or because of the failure of the consideration upon which it was executed. Appellee's counterclaim in this action was an appropriate manner, under our practice, of making the direct attack to have the conveyance canceled. The judgment is affirmed.

Chief Justice Paynter's dissenting opinion:

As a matter of fact, Thomas did not participate in the fraud of Parker. Neither does the court find that he did, or base its opinion upon that idea, but it erroneously assumes that he occupied the same position in the transaction that Parker did, who practiced the fraud upon Sweet. The court decides the case as if it were an action by Parker to enforce the executory contract against Sweet. Sweet sold the farm to Parker or Sewell, and executed a paper in the nature of a title bond for same, in which there was a covenant that he would make a deed of general warranty. Parker proposed to sell the land to Thomas, but he would not buy it until he had seen Sweet; and upon assurance by him that the matter was all right, he bought it. Thomas and Parker agreed upon the price, and Parker executed and delivered to Thomas a title

Thomas v. Sweet.

bond for the farm, in which he agreed to make him a deed
with covenants of general warranty. Sweet was not required
to surrender the possession of the farm until the following
October. Neither would he have been compelled to make a
deed for it until Parker had made or procured him a satis-
factory deed for the Missouri land. Parker did this, and
had a deed made to Sweet for it, which was satisfactory to
him. Then, in compliance with his contract with Parker,
he executed and delivered to Thomas a deed to the farm
in question, which he accepted in compliance with the
terms of the title bond which Parker had delivered to
him. So Sweet had accepted as satisfactory the deed for
the Missouri land, and, in effect, declared to Thomas, by
the tender to him of the deed to the farm, that Parker had
complied fully with the contract which they had with ref-
erence to the land. It was, in effect, a declaration to Thom-
as that Parker had the right to sell him the land, and
that, in compliance with that right, he tendered Thomas
a deed for it. In doing so, he procured Thomas to release
Parker on the covenants of the title bond to him by induc-
ing him to accept the deed which he tendered him. There
is no principle of law or equity cited by the court, or can,
in my opinion, be cited which gives Sweet the right in the
action against him to recover possession of the land to
defeat it, by showing that Parker practiced a fraud upon
him. This could only be done by showing that Thomas
participated in the fraud, which was done. The mere fact
that Thomas may have known the terms of the contract be-
tween Parker and Sweet does not impute to him knowledge
that it had been procured by fraud. Its terms do not im-
port that it was obtained by fraud. So the mere fact that
Thomas was acquainted with the terms of the contract
does not even tend to show that he had knowledge that it

was obtained by fraud. There was a consideration to up-
hold the deed which Sweet made Thomas. That
was the obligation of Parker to see that Thom-
as was made a deed of general warranty for the
land. If the title failed, he had to look to the
covenants in Sweet's deed to him for redress. The effort
of·Sweet in this action is to rescind an executed contract. .
As Thomas neither participated in the fraud, nor had no-
tice of it when he accepted the deed, it should be canceled.
1. Bigelow, Frauds, p. 253, says: "A person who voluntar-
ily executes a deed, though induced to do so by fraud, can
avoid it only against the party who exercised the unlawful
influence, or against one who took title under the deed
with participation in or notice of the fraud." Kerr, Fraud
& M., 339, says: "If the person by whose fraudulent mis-
representation a transaction has been induced is not him-
self a party to the transaction, the transaction stands good,
and can not be repudiated, if the other party to the trans-
action has not been party or privy to the fraud. The party
defrauded must seek redress in an action in the case at
law for damages against the party of whose fraud he com-
plains. If, for instance, a man has been induced by the
false representations of a third party to deal with another,
he can not have the transaction rescinded, if the other
party to the transaction has not been party or privy to the
false representation." Lawson, Cont., section 236, says:
"The representation must have been made by the other
party to the contract, or by his agent, or with his conni-
vance, for a contract is not affected by the fraud of a third
person in which the other party was not implicated. There
is no case in which a fraud intended by one man shall
overturn a fair and *bonu fide* contract between two others."
In Fightmaster v. Levi (13 R., 412) (17 S. W., 195), it ap-

peared that through the fraud of the husband the wife was induced to convey her property to Levi. The court refused to set aside the deed, saying: "In the absence of some fraud practiced by Levi, he should not be held responsible for what the husband did in the premises." In the case of Lee v. Vaughn, 1 Bibb, 235, the facts were such to make the rule announced applicable to this case; the court saying: "That Gullian practiced a fraud on the appellant seems to be most abundantly proven; but, Vaughn, not having been proven to have participated in it, he can not be affected by it." Morrison v. Clay, Hardin, 421, announces a rule in accord with the authorities from which we have quoted. Additional reasons might be given for reaching the conclusion that I have in this case, but time forbids further elaboration. It is evident that Parker practiced a gross fraud upon Sweet, but I do not think it is right to take Thomas' property to compensate him for the loss he sustained by reason of the fraud of Parker. I dissent from the opinion of the court.

Judges Guffy and White concur in this dissent.

Response by Judge Hobson, overruling petition for new hearing.

The rule as to when a person who voluntarily executes a deed which is procured by fraud can avoid it against other persons than the party who perpetrated the fraud is thus accurately stated in Pomeroy's Equity Jurisprudence: "The destructive effect of fraud upon any contract, conveyance, or other transaction is so essential and far-reaching that no person, however free from any participation in the fraud, can avail himself of what has been obtained by the fraud of another, unless he is not only innocent, but has given some valuable consideration." Section 899. "The remedy which equity gives to the defrauded person

is most extensive. It reaches all those who were actually ly concerned in the fraud, all who directly and knowingly participated in its fruits and all those who derived title from them voluntarily or with notice. A court of equity will wrest property fraudulently acquired, not only from the perpetrator of the fraud, but, to use Lord Cottenham's language, from his children and his children's children, or, as elsewhere said, 'from any persons amongst whom he may have parceled out the fruits of his fraud.' There is one limitation. If the property which was acquired by the fraud has come by transfer into the hands of a *bona fide* purchaser for a valuable consideration, and without notice, even though his immediate grantor or assignor was the fraudulent party himself, the hands of the court are stayed, and the remedy of the defrauded party with respect to the property itself is gone. His only relief must be personal against those who committed the fraud." Section 918. It will thus be seen that only *bona fide* purchasers without notice are within the protection of the rule. If Sweet had conveyed the land to Parker, and Parker had conveyed it to Thomas for a valuable consideration, which was paid by him, without notice of the fraud of Parker, the rule would apply, and Thomas would be protected. But that is not the case. Sweet was in possession of the land. He had made no deed to any one. He was to hold possession of the land until he got the land in Missouri. Thomas had notice of this. He knew that the Missouri land was the consideration that Sweet was to get for his farm, and that he had not gotten it and was to hold his farm until he did get it. He parted with nothing when the deed was made by him to Sweet, or upon the faith of that deed, so far as the record shows. When the conveyance was made, he was charged with notice that it was only

in execution of the contract between Parker and Sweet. The making of the deed did not fully execute the contract. It was only a step in the full performance of it. The contract would not be performed by Sweet until he surrendered possession of the farm, and this he was not to do until he got the land in Missouri. As Thomas had notice of all this, and parted with nothing on the face of the deed, he took it subject to the equities of Sweet growing out of his contract with Parker, when the Missouri land turned out to be a myth. There is no middle ground. Thomas was not a *bona fide* purchaser of the land without notice. He therefore stands in no better light than Parker, unless protected by estoppel; and, as is clearly shown in the opinion, the facts established are insufficient to make out an estoppel. The deed was as truly the product of the fraud of Parker as the original contract. The arm of equity is not so short that it can not uncover fraud, no matter in what form the victim may be induced to put the transaction; for, the grosser the fraud, the greater effort will be made to invent means to sanctify it, and the dupe is only as putty in the hands of the schemer who would rob him.

Petition overruled.