GILL et al. v. FLYNN et al.   (No. 5449.)

(Court of Civil Appeals of Texas. Austin.
March 24, 1915. Rehearing Denied
April 28, 1915.)

1. HOMESTEAD ⬅115—MORTGAGES—VALIDITY.

A conveyance of a homestead intended as a mortgage is void as to any one not an innocent purchaser.

[Ed. Note.—For other cases, see Homestead, Cent. Dig. §§ 183, 184, 186–190; Dec. Dig. ⬅115.]

2. HOMESTEAD ⬅129 — CONVEYANCE — BONA FIDE PURCHASERS.

Where the credit man and representative of a corporation prepared a conveyance of a debtor's homestead, the terms of which indicated that the debtor was to receive the purchase price and did not show the conveyance was for the benefit of the corporation, neither the credit man nor the corporation can claim to be an innocent purchaser, though they did not know of the debtor's misrepresentations to his wife by which her signature was obtained.

[Ed. Note.—For other cases, see Homestead, Cent. Dig. §§ 233, 234; Dec. Dig. ⬅129.]

3. HOMESTEAD ⬅118 — CONVEYANCE — EVIDENCE—SUFFICIENCY.

In a suit to set aside a conveyance of a homestead, evidence *held* to show that the plaintiff wife's signature was obtained by fraud.

[Ed. Note.—For other cases, see Homestead, Cent. Dig. §§ 192, 195, 203–209, 216, 217; Dec. Dig. ⬅118.]

Error from District Court, Brown County; John W. Goodwin, Judge.

Action by E. H. Flynn and another against C. W. Gill and others. There was a judgment for plaintiffs, and defendants Gill and Radford bring error. Affirmed.

A. H. Kirby and Theodore Mack, both of Ft. Worth, for plaintiffs in error. Arch Grinnan, of Brownwood, for defendants in error.

KEY, C. J. Mrs. Belle Flynn, joined by her husband, E. H. Flynn, brought this suit against A. E. Duff, J. C. Duff, C. W. Gill, and the J. M. Radford Grocery Company, seeking to recover the title and possession of a house and two lots in the town of Bangs, in Brown county, Tex., and also asking for a decree canceling certain deeds, notes, and alleged liens for the purpose of removing cloud from the plaintiffs' title. We deem it unnecessary to set out in full all of the pleadings, and content ourselves with saying that the plaintiffs alleged that the instrument in the form of a deed executed by them to C. W. Gill, and under which the defendants hold the property, was intended as a mortgage, and therefore was void because at the time referred to the property was the homestead of the plaintiffs. Mrs. Flynn also alleged that her signature to and acknowledgment of that instrument was secured by fraudulent misrepresentations made to her by her husband, by which she was induced to sign and acknowledge the deed; the substance of such representations being that he, the husband, was selling the property for $500 in cash and $2,000 in vendor's lien notes, which notes he would sell to the Bangs Mercantile Company for money and use the proceeds of the sale in purchasing another homestead for himself and wife. The defendants filed elaborate answers, denying that the deed from the plaintiffs was intended as a mortgage, and averring that they were innocent purchasers without notice, and entitled to protection as such. After hearing all of the testimony, the trial court instructed a verdict for the plaintiffs, which was returned, and judgment rendered accordingly, and from that judgment defendants have brought the case to this court, and present the contention that the trial court committed reversible error when it declined to permit the jury to pass upon the rights of the parties and peremptorily instructed a verdict for the plaintiffs.

We have reached the conclusion that the case was properly disposed of, and as it cannot be intelligently discussed without presenting the substance of the testimony bearing upon the question of fraud, we state the same as follows:

The undisputed proof shows: That at the time in question E. H. Flynn and A. E. Duff were engaged in the mercantile business in the town of Bangs under the firm name of the Bangs Mercantile Company. That the firm was indebted to the Radford Grocery Company, of Abilene, Tex., in the sum of $4,075, all of which was past due. This was in the fall of 1912, and the undisputed testimony shows that after an unsuccessful effort

⬅For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

by the Radford Grocery Company to collect said debt, and about November 7, 1912, an agreement was entered into between E. H. Flynn, acting for himself and the Bangs Mercantile Company, and C. W. Gill, acting for himself and the Radford Grocery Company, as a result of which an instrument in the form of a deed was prepared, which purported to convey the property in controversy from E. H. Flynn and his wife to C. W. Gill. The consideration expressed in the deed was $500 cash and four vendor's lien notes, executed by C. W. Gill, for the sum of $500 each, and payable in one, two, three, and four years. At that time,·and when Mrs. Flynn signed and acknowledged that instrument, the property which it purported to convey was the homestead of Mrs. Flynn and her husband, E. H. Flynn. At the time in question another instrument was prepared, which purported to convey the four notes above referred to from Flynn and his wife to the Bangs Mercantile Company, and that instrument and the deed referred to were sent to Mrs. Flynn, who was then in the state of Indiana, accompanied by a letter from her husband, E. H. Flynn, and she and her husband both testified that the latter stated in the letter that he was selling the property for $500 in cash, and that he would receive $2,000 from the Bangs Mercantile Company for the notes, and would invest the proceeds derived from the sale of the property conveyed by the deed in another homestead; and Mrs. Flynn testified that she relied upon that statement and promise, and would not have signed and acknowledged the deed, if she had known that such was not to be the result of the transaction. She also testified that she was not familiar with her husband's business, and did not know that he or the Bangs Mercantile Company was indebted to the Radford Grocery Company at that time. An agent of the Radford Grocery Company named Davis testified that he went to Bangs, and in a conversation with both members of the Bangs Mercantile Company insisted upon the payment of the indebtedness of that company to the Radford Grocery Company, and said that E. H. Flynn stated that he was willing to sell his homestead and apply the proceeds to that debt. He also testified that he informed C. W. Gill, who was a member of the firm of Radford Grocery Company, what Mr. Flynn had said concerning his willingness to apply his homestead, or the proceeds thereof, to the payment of the debt. C. W. Gill testified:

"I was representing the Radford Grocery Company as credit man at that time. After visiting Mr. Flynn, Mr. Davis came back and told me that he· had checked up the collateral and Mr. Flynn was considerably short, probably $3,000 or $4,000. Mr. Davis simply told me that Mr. Flynn was short in his collections, and that in order to reinstate himself with the Radford Grocery Company he was perfectly willing to sell his home to anybody and pay the proceeds to cover this charge. I was represent-ing the Radford Grocery Company, and Mr. Davis was talking to me as their representative. After that I thought about the matter, and realized that probably we would make a loss later on, and I decided, if I could buy the property myself from Mr. Fylnn, and the company would use the paper that I gave Mr. Flynn against the property, I would make the deal with him. I talked with Mr. Radford about it, and he agreed that the company would use the paper. I then telephoned Mr. Flynn that I would meet him in Brownwood on the 7th of November, and for him to bring Mr. ·Duff with him. When he came to Brownwood I put up a check as a forfeit, and Mr. Flynn put up a check on the Bangs Mercantile Company. After the deed came back from Mrs. Flynn, we came back down here (meaning Brownwood). Mr. Leach turned the vendor's lien notes and the check over to me, and I suppose that he delivered Mr. Flynn's check to him. The check went from Flynn to the Bangs Mercantile Company, and from the Bangs Mercantile Company to the Radford Grocery Company, as the indorsements show. It was the agreement that these notes were going to the Radford Grocery Company in lieu of the debt that the Radford Grocery Company held against the Bangs Mercantile Company. These notes contained a lien against that property. I certainly did not ask Mr. Flynn what he wrote in that letter to his wife. Mr. Flynn told me that he had to explain the same to his wife, but it was none of my business what he wrote."

Mrs. Flynn signed and acknowledged the deed and the instrument transferring the notes to the Bangs Mercantile Company and returned them to her husband. A short time thereafter Mr. Flynn and his partner, Mr. Duff, and C. W. Gill, met in Brownwood again, when the check for $500 and the four vendor's lien notes signed by C. W. Gill were delivered to them by Mr. Leach, to whose custody they seem to have been intrusted until the matter was ready for final consummation. Thereupon Mr. Flynn indorsed the check and the four notes to the Bangs Mercantile Company, and his partner, Mr. Duff, acting for the Bangs Mercantile Company, immediately indorsed them to the Radford Grocery Company, and they were at once taken possession of by C. W. Gill, acting for the Radford Grocery Company. Mr. Flynn expressed doubt about the genuineness of his signature to the indorsement on the check, but we dispose of the case upon the assumption that it was genuine.

[1-3] We deem it unnecessary to set out all the testimony tending to show that the instrument purporting to be a deed from Flynn and his wife to C. W. Gill was or was not a mortgage. If it was a mortgage, as it undertook to convey appellees' homestead, of course, it was void and of no effect, at least as to any one not entitled to protection as an innocent purchaser. But counsel for appellant contend that the instrument referred to was not a mortgage, or at any rate that appellant had the right to have the jury pass upon that question; but the answer to that contention is that, while it might have been necessary for the court to have submitted that issue to the jury, if the appellees' case had rested alone upon the question of mortgage vel non, there was another theory in the

case, which we hold justified the court in directing a verdict for the appellees, and that theory was that if the instrument was a deed the undisputed proof shows that Mrs. Flynn's execution of it was procured by fraud, of which fraud both C. W. Gill and the Radford Grocery Company had notice; and it was agreed at the trial that the Duffs acquired no better title than C. W. Gill had, and therefore were not themselves innocent purchasers without notice. Upon this branch of the case we agree with counsel for appellees; and, assuming that the instrument referred to was a deed, and not a mortgage, and assuming that appellee E. H. Flynn signed his name to the indorsement upon the back of the $500 check, still the undisputed proof shows that Mrs. Flynn's execution of the deed was procured by fraud, and that, as before stated, both C. W. Gill and the Radford Grocery Company had notice of such fraud. C. W. Gill, the grantee in the deed, acted both for himself and the Radford Grocery Company in the transaction. He wrote the deed, which recited a cash consideration of $500, and the further fact that four $500 vendor's lien notes were to be executed and delivered to E. H. Flynn; yet he knew at the time that E. H. Flynn would not receive $500 in cash and the notes referred to, in the sense that he could exercise absolute dominion over them and use them for the purchase of another homestead, or in any other manner that he saw proper, and that the only benefit that would result to E. H. Flynn or his wife would be the discharge of $2,500 of the indebtedness owing by him and his partner to the Radford Grocery Company. This being the case, and conceding that C. W. Gill and the Radford Grocery Company were ignorant of the contents of the letter written by E. H. Flynn to his wife, and had no knowledge whatever of the representations made in that letter, still they had actual knowledge of the fact that the recitals in the deed were misleading, and calculated to deceive and impose upon Mrs. Flynn, and therefore they cannot successfully claim to be innocent purchasers without notice of the fraud. In that respect this case is quite similar to the case of Scoggin v. Mason, 46 Tex. Civ. App. 480, 103 S. W. 831, decided by this court, and we copy as follows from the opinion of Chief Justice Fisher in that case:

"Proceeding with the facts that relate to the transaction with the Rotan Grocery Company, we find that on April 13, 1906, appellee, Mrs. Mason, and her husband, J. A. Mason, executed and delivered a deed, absolute in form, which was intended to be of that nature and character, to H. H. Shear, conveying the land in controversy. It is conceded that the conveyance to Shear was for the use and benefit of the Rotan Grocery Company, and that the latter by that conveyance was intended to become the owner of the property. The deed is in the usual form of a conveyance of land, and recites a total consideration of $600, and also recites that $300 was cash in hand paid, the receipt of which is thereby duly acknowledged, and that $300 was the assumption of payment by the vendee of the note due Scoggin, which was covered by the

deed heretofore stated as executed to him. The deed was properly signed and acknowledged by the wife and husband in the manner required by statute in conveying the homestead, and there is no attack made upon the officer's certificate as not stating the facts. The property conveyed was at that time the homestead of the plaintiff and his wife, and she has since then, to the present time, continued to occupy the same as a homestead. She was abandoned by her husband under circumstances which would justify her in suing alone. The deed was explained to her by the officer who took her separate acknowledgment in accordance with its terms, and she signed the same supposing the recital of a cash consideration of $300 was true and correct; and she testified, in effect, that if she had known that no cash was to be received as a part of the consideration she would not have consented to the sale of her homestead. At or about the time, and before, this deed was executed, her husband stated and represented to her, for the purpose of getting her to join in the conveyance, that a part of the consideration was to be paid in cash, and with this they would buy another home in lieu of the old, which it seems from the evidence was pointed out and selected for this purpose. She relied upon this statement and promise; otherwise she would not have sold. As a matter of fact, other than the indebtedness to Scoggin, the husband was then also indebted on an account to the Rotan Grocery Company in the sum of about $300, and there was then an agreement between the agent of the latter, who negotiated the transaction, and the husband, that no cash consideration would be paid; but it was agreed that the consideration should, in addition to the Scoggin note, be the debt due by the husband to the Rotan Grocery Company. The agent of this company wrote and prepared the deed, and in his evidence he states: 'Yes; I wrote the deed myself. It is ordinary to state a cash consideration when payment is made in any way, and that is the reason I stated it that way in the deed. Yes; I did write it as a cash consideration, when in fact it was not a cash consideration. I knew it was not paid in cash, except as to the account. We considered that cash. I don't know what Mrs. Mason agreed to, only by the deed. Yes; I know the deed does not recite a line about his debts, except the Scoggin debt; it shows that. Yes; I was acting as the agent of the Rotan Grocery Company, and as the agent of H. H. Shear. It was made to Shear just for convenience. The Rotan Grocery Company owns it. I think I was in Mr. Mason's store while he was gone up to his house to see his wife about the selling of the place. I did not have it already written up. I wrote it up there in the clerk's office. I did not tell Mr. Mason to state to his wife the deal between us. He told me before that he had talked to his wife about it.'

"Of course, it must be conceded that the wife has such an interest in the homestead upon which she can base an action to rescind on the ground of fraud; and it must follow that the fruits of the fraud may be wrested from all that participate in it, or all that profit by it with notice. Martin v. Robinson, 67 Tex. 381, 3 S. W. 550. There can be no question here but that a fraud by the husband was perpetrated upon the wife by material statements and representations of a dual nature—those that related to the existing fact that the consideration for the conveyance agreed to was in part cash, and those that related to the promise and agreement made that the cash would be invested in another home. It is clear that these representations in both respects were falsely made, and with the intention that the promise should never be kept. When representations as to a matter material are falsely made as to an existing fact, or if they consist of promises made relating to something material, with an intention never to perform, such, for instance, that the consideration of the transaction is of a certain nature,

and that there will result therefrom a substantial benefit to the party to whom the representation is made, and who, by reason thereof, is induced to act, and there is a deliberate failure of fulfillment, fraud is the result, for which rescission and cancellation is the remedy. 2 Pom. Eq. (3d Ed.) §§ 875–903; Pironi v. Corrigan, 47 N. J. Eq. 135, 20 Atl. 218; Martin v. Jordan, 60 Me. 531; McMullin's Adm'rs v. Sanders, 79 Va. 364; Morgan v. Dinges [23 Neb. 271], 36 N. W. 544 [8 Am. St. Rep. 121]; Fairchild v. McMahon [139 N. Y. 290], 34 N. E. 779 [36 Am. St. Rep. 701]; Simar v. Canaday, 53 N. Y. 298, 13 Am. Rep. 523; Boles v. Merrill, 173 Mass. 491, 53 N. E. 894 [73 Am. St. Rep. 308]; Thomas v. Sweet [111 Ky. 467], 63 S. W. 787 [65 S. W. 827]; C. T. & M. C. Ry. Co. v. Titterington, 84 Tex. 223, 19 S. W. 472 [31 Am. St. Rep. 39]; McFarland v. McGill [16 Tex. Civ. App. 298], 41 S. W. 402; St. Louis Expanded Metal Co. v. Burgess [20 Tex. Civ. App. 527], 50 S. W. 486; American Cotton Co. v. Collier [30 Tex. Civ. App. 105], 69 S. W. 1024. The principle stated is merely elementary, and is extracted from the authorities cited, and, although none on the facts are directly in point, some are closely related by analogy. The facts here present not a case merely of breach of contract or failure of consideration, for which equity by rescission would afford no relief (Moore v. Cross, 87 Tex. 561, 29 S. W. 1051; Railway Co. v. Titterington, supra; Mayer v. Swift, 73 Tex. 369, 11 S. W. 378), but it is one where representations and promises are falsely and fraudulently made concerning the real consideration upon which the transaction is based, and the benefit therefrom to be received by the party who is induced to act by reason of such statements. And in such a case, as said in Pironi v. Corrigan: 'The just expectations of the complainant have not been fulfilled, and that part of the consideration of the deed has failed. This conclusion leads to the setting aside of the conveyance.' There is between husband and wife a relation of trust and confidence; and the former in his business transactions with the latter, relating to her property interests, rests under the duty to make a true and full disclosure of the facts known, and to abstain from representations which are not true, and which are calculated to deceive, and which are of a nature likely to induce action to her injury. In a case of abuse of confidence and duty, the wife, if she has sustained substantial injury, would have a right of action to rescind. Wiley v. Prince, 21 Tex. 639.

"It only remains to be seen to what extent, if any, these principles, and the relief provided, would apply to one shown by the evidence to be so situated as the appellant the Rotan Grocery Company. They must have known, when dealing for the purchase of the homestead, where the validity of the conveyance depends upon the separate acknowledgment of the wife, that it is not the mere previous negotiations that create the right acquired; but, as said in Davis v. Brewster, 59 Tex. 96, the real question is: With what intent did the husband and wife execute the instrument, which was not completed until the delivery? And from this it must follow that its status, as fixed and completed at that time, will determine the right of the purchaser. The deed, as prepared and separately, upon its face spoke the truth. The consideration was accurately stated as agreed to with the wife, and when she signed and acknowledged the instrument it became effective as a conveyance, and only binding upon her to the extent of the terms and conditions therein expressed. And thereafter these terms, in material respects, could not be changed by the husband and the purchaser without her consent. While it is true that a purchaser dealing with the husband may, ordinarily, act upon the assumption that he has acted in good faith with the wife (Pierce v. Fort, 60 Tex. 469), but to concede the right of the husband and the purchaser to consummate the sale of the homestead by virtue of terms and conditions materially different from those stated in the conveyance as executed and delivered is virtually to destroy the force of the statute that requires the joinder of the wife, under separate acknowledgment, in order to create a valid conveyance; and, if it can be said that that part of the instrument which calls for a cash consideration is material, we see no reason why a change as to it should not come within the prohibition, as well as any other of its material terms; and, if such is the case, the substitution of the other consideration by the husband and purchaser deprived the wife of the benefit she expected to receive in consenting to joining in the conveyance, and, in such instance, it ought to be held that a purchaser who is a party to such a change takes subject to the fact that the change may result in an imposition upon the wife, or, at least, in such a case, good faith and fair dealing should require from the purchaser information of the wife as to whether her rights by the change would be seriously affected. The deed being tested by its terms existing when delivered, the change thereof in the consideration to be paid, ascertained by the agreement between the husband and the purchaser, materially affected the interest of the wife; and the purchaser, a party to such a change, ought not to be relieved from its consequences by the assertion that he knew, and supposed the wife also knew, that the recital in the deed did not truthfully and correctly state the consideration as agreed to by him and the husband. The answer to this would be that the deed as delivered informed him that the wife intended it to have a certain effect, and it cannot be said that it was treating her fairly to ignore one of its important stipulations, and give it an effect different from what the deed expressly required, without an inquiry from her. She having executed the deed with the recital in it of a cash consideration, that fact alone should have been sufficient to excite his inquiry as to whether the wife had consented that a different consideration could be received. In Connecticut Mut. Life Ins. Co. v. Smith [117 Mo. 261] 22 S. W. 629 [38 Am. St. Rep. 656], the Supreme Court of Missouri, in considering inferential facts on the question of notice, said: 'Notice in this connection does not mean positive information brought directly home to the parties sought to be charged. Anything that will put a prudent man upon inquiry is notice; and gross negligence in failing to make inquiry when the surrounding facts suggest the existence of others, and that inquiry is to be made, is tantamount in the courts of equity to notice. Major v. Bukley, 51 Mo. 227; Leavitt v. Laforce, 71 Mo. 353; Roan v. Winn [93 Mo. 503], 4 S. W. 736. This is the universally prevalent doctrine of courts of equity in all jurisdictions. 2 Pom. Eq. Jur. §§ 596–600. And actual notice may be inferred from circumstances and by reasonable deductions. Brown v. Volkening, 64 N. Y. 76. Courts of equity, since their earliest foundation, have always recognized that the still small voice of suggestion, emanating as it will from contiguous facts and surrounding circumstances pregnant with inference and provocative of inquiry, is as potent to impart notice as a presidential proclamation or an army with banners.'

"There was nothing, up to the time of this delivery, that appellee was aware of, that would lead her to believe that her hopes and expectations, based upon the representations of her husband, would result in disappointment. If it may be conceded that the agent of the Rotan Grocery Company, who negotiated with the husband in the transaction, and who prepared and wrote the deed, had no actual knowledge that the wife did not know the real consideration, still, in preparing that instrument, he concealed, under one of its material recitals, a fact so important that, if the instrument under

his preparation had been made to speak the truth, the entire transaction would have failed, and the instrument would not have been executed by her. He knew, when this instrument came ·back to him, delivered by the husband, that at that time only it became effective, and that it had been, according to its terms, explained to the wife by the officer who took her acknowledgment, and that, when she finally became bound by the same, the false recital was calculated to deceive and mislead one not knowing the truth; and, if the trial court or this court were so charitably inclined as to acquit him of any intent to so frame the deed as to deceive the wife and to conceal the true facts, it must be confessed that the result was the same, as she in fact was deceived to her disadvantage."

We note appellants' contention that, notwithstanding the fact that the testimony of Mrs. Flynn was corroborated by that of her husband as to the false and fraudulent representations by which she was induced to execute the deed, inasmuch as they are both interested parties, the jury was not required to accept their testimony as true, though they were not contradicted. There are cases which support the rule relied upon by appellants, but we do not think that this case comes within that class, because the recited consideration in the deed, which was placed there by one of the appellants, strongly corroborates Mrs. Flynn's testimony to the effect that she was deceived and led to believe that, as a result of the transaction, her husband would obtain a consideration equivalent to $2,500 in money, which he could use for the purchase of another homestead. The deed itself, as prepared by appellant Gill, was highly calculated to deceive and impose upon Mrs. Flynn; and when she and her husband both testified that the latter made false representations to her which were in harmony with, and to a large extent confirmed by, the deed itself, we think a finding of the jury against her on the question of fraud could not be permitted to stand.

This renders it unnecessary for us to decide whether or not the acceptance by the Radford Grocery Company of the check and notes for $2,500, and the cancellation of the evidence of the indebtedness of the Bangs Mercantile Company to the Radford Grocery Company, was such a consideration as will support the plea of innocent purchaser, and we express no opinion upon that question.

Upon a consideration of the entire record, our conclusion is that the trial court made a proper disposition of the case, and therefore its judgment is affirmed.

Affirmed.