### R. F. SCOGGIN, ET AL. v. MRS. MATTIE MASON

Decided May 22, 1907.

**1.—Husband and Wife—Homestead—Parties.**

The wife has such an interest in the homestead as to entitle her to maintain alone an action to cancel a conveyance of it which she had joined her husband in making, being induced thereto by his fraud, when he has abandoned her and refuses to join in the suit, though she remains in undisturbed possession.

**2.—Conveyance obtained by Fraud—Representations—Promise.**

Fraudulent representations which will avoid a contract may consist in false statements as to existing facts or promises as to the future not intended to be performed.

**3.—Same—Homestead—Consideration—Innocent Purchaser.**

The wife's joinder in a conveyance of the homestead was obtained by representations to her by the husband that the consideration was, as recited in the deed, partly a cash payment, and that this would be used in the purchase of another home. Held, that the consummation of the transaction by the husband's delivery of such deed to the grantee on consideration, instead, of settlement of an existing debt was a departure from the contract to which the wife agreed, and the conveyance was sustainable only in case the grantee acted innocently and in good faith.

**4.—Same—Notice.**

Notice may be inferred from circumstances which would put the person on inquiry, and the fact that the purchaser consummated the transaction for a consideration different from that recited and that the deed was prepared by him with such false recital of a cash consideration was sufficient to support a finding against him on the issue of good faith.

**5.—Valuable Consideration—Preexisting Debt.**

In the opinion of Chief Justice Fisher, a purchaser of the homestead in consideration of a pre-existing debt from the grantor is not an innocent purchaser for value nor entitled as such to defeat the wife's action to set aside the conveyance because her joinder in and acknowledgement thereof was obtained by fraud practiced on her by her husband.

Appeal from the District Court of Hamilton County. Tried below before Hon. N. R. Lindsey.

*A. R. Eidson,* for appellant.—The plaintiff being a married woman and in possession of the property could not maintain a suit to cancel a deed executed by herself and husband without being joined by her husband or making him a party to the suit. Murphy v. Coffey, 33 Texas, 508; Jackson v. Cross, 36 Texas, 193; Kelley v. Whitmore, 41 Texas, 648.

The court erred in canceling the deed executed by plaintiff and her husband to defendant Shear, because said deed was legally executed, in the manner and form required by law, and was for a valuable consideration and was understood and intended by plaintiff to be an absolute conveyance of said property. Rev. Stats., art. 636; Davis v. Brewster, 59 Texas, 93; Webb v. Burney, 70 Texas, 322; Gray v. Shelby, 83 Texas, 408.

No briefs were on file for appellee.

FISHER, CHIEF JUSTICE.—This is a suit by appellee, Mrs. Mason, against R. F. Scoggin, H. H. Shear, Mrs. M. S. Faubion, and the Rotan Grocery Company, to recover certain lands described in her petition, and alleged to be her homestead, and to cancel certain pretended conveyances thereto, executed by herself and husband, J. A. Mason. The suit was brought by her without the joinder of her husband, and the averments of the original petition, in connection with the statements made in the supplemental petition, show an abandonment by the husband as a sufficient excuse for not joining him. It is averred that, at the times the several conveyances were executed by her and her husband, the property in controversy was their homestead and so continued to the bringing of this suit, and that they executed to Scoggins a conveyance to the homestead, which is alleged to be in fact a mortgage, and which was acquired by Mrs. Faubion with notice. She also alleges that they executed and delivered to Shear, for the use and benefit of the Rotan Grocery Company, a conveyance of the homestead, which is also alleged to be a mortgage, upon which the principal attack is made, on the ground that the execution of the deed by the wife was procured by certain false and fraudulent promises and representations made by her husband, with

the connivance, knowledge and consent of the Rotan Grocery Company, which induced her to execute the same.

The defendants pleaded not guilty, and that the instruments so executed were absolute conveyances; and, if not, the same were procured without notice that they were intended as mortgages, and that the Rotan Grocery Company and Shear had no notice of any fraud perpetrated by the husband in procuring the joinder of the wife in the conveyance to them.

The case was tried before the court without a jury, and judgment rendered in favor of appellee cancelling the conveyances in question and decreeing recovery by her against appellants.

It is not necessary, other than mere outlining the agreement of the parties, that we should make any finding relative to the conveyance to Scoggin, as pleaded, for it is agreed that that instrument was intended as a mortgage; and it was also agreed that if the facts will support a judgment against the Rotan Grocery Company, the judgment of cancellation of the Scoggin deed was and is correct.

Proceeding with the facts that relate to the transaction with the Rotan Grocery Company, we find that on April 13, 1906, appellee, Mrs. Mason, and her husband, J. A. Mason, executed and delivered a deed, absolute in form, which was intended to be of that nature and character, to H. H. Shear, conveying the land in controversy. It is conceded that the conveyance to Shear was for the use and benefit of the Rotan Grocery Company, and that the latter by that conveyance was intended to become the owner of the property. The deed is in the usual form of a conveyance of land, and recites a total consideration of $600; and also recites that $300 was cash in hand paid, the receipt of which is hereby duly acknowledged, and that $300 was the assumption of payment by the vendee of the note due Scoggin, which was covered by the deed heretofore stated as executed to him. The deed was properly signed and acknowledged by the wife and husband in the manner required by statute in conveying the homestead, and there is no attack made upon the officer's certificate as not stating the facts. The property conveyed was at that time the homestead of the plaintiff and his wife, and she has since then to the present time, continued to occupy the same as a homestead. She was abandoned by her husband under circumstances which would justify her in suing alone. The deed was explained to her by the officer who took her separate acknowledgment in accordance with its terms, and she signed the same supposing the recital of a cash consideration of $300 was true and correct. And she testified, in effect, that if she had known that no cash was to be received as a part of the consideration she would not have consented to the sale of her homestead. At or about the time and before this deed was executed, her husband stated and represented to her, for the purpose of getting her to join in the conveyance, that a part of the consideration was to be paid in cash, and with this they would buy another home in lieu of the old, which it seems from the evidence was pointed out and selected for this purpose. She relied upon this statement and promise, otherwise she would not have sold. As a matter of fact, other than the indebtedness to Scoggin, the husband was then also indebted on an account to the Rotan Grocery Company

in the sum of about $300; and there was then an agreement between the agent of the latter who negotiated the transaction, and the husband, that no cash consideration would be paid; but it was agreed that the consideration should, in addition to the Scoggin note, be the debt due by the husband to the Rotan Grocery Company. The agent of this company wrote and prepared the deed, and in his evidence he states: "Yes, I wrote the deed myself. It is ordinary to state a cash consideration when payment is made in any way, and that is the reason I stated it that way in this deed. Yes, I did write it as a cash consideration when in fact it was not a cash consideration. I knew it was not paid in cash except as to the account. We considered that cash. I don't know what Mrs. Mason agreed to do, only by the deed. Yes, I know the deed does not recite a line about his debts, except the Scoggin debt, it shows that. Yes, I was acting as the agent of the Rotan Grocery Company, and as the agent of H. H. Shear. It was made to Shear just for convenience. The Rotan Grocery Company owns it. I think I was in Mr. Mason's store while he was gone up to his house to see his wife about the selling of the place. I did not have it already written up. I wrote it up there in the clerk's office. I did not tell Mr. Mason to state to his wife the deal between us. He told me before that he had talked to his wife and told her about it."

Of course it must be conceded that the wife has such an interest in the homestead upon which she can base an action to rescind on the ground of fraud; and it must follow that the fruits of the fraud may be wrested from all that participate in it, or all that profit by it with notice. Martin v. Robinson, 67 Texas, 381. There can be no question here but that a fraud by the husband was perpetrated upon the wife by material statements and representations of a dual nature, those that related to the existing fact that the consideration for the conveyance agreed to was in part cash, and those that related to the promise and agreement made that the cash would be invested in another home. It is clear that these representations in both respects were falsely made and with the intention that the promise should never be kept.

When representations as to a matter material are falsely made as to an existing fact, or if they consist of promises made relating to something material, with an intention never to perform, such for instance that the consideration of the transaction is of a certain nature, and that there will result therefrom a substantial benefit to the party to whom the representation is made and who, by reason thereof, is induced to act, and there is a deliberate failure of fulfillment, fraud is the result, for which rescission and cancellation is the remedy. 2d Pomeroy's Eq., 3d ed., secs. 875 to 918; Pironi v. Corrigan, 47 N. J. Eq., 135; Martin v. Jordan, 60 Me., 531; McMullin v. Sanders, 79 Va., 364; Morgan v. Dinges, 36 N. W. Rep., 544; Fairchild v. McMahon, 34 N. E. Rep., 779, and the same case in 139 N. Y., 290, and 36 Am. St. Reps., 701; Simar v. Canaday, 53 N. Y., 298; S. C., 13 Am. Rep., 523; Boles v. Merrill, 173 Mass., 491; S. C., 73 Am. St. Rep., 309; Thomas v. Sweet, 63 S. W. Rep., 787; Chicago, T. & M. C. Ry. v. Titterington, 84 Texas, 223; McFarland v. McGill,

41 S. W. Rep., 402; St. Louis Expanded Metal Co. v. Burgess, 50 S. W. Rep., 486; American Cotton Co. v. Collier, 69 S. W. Rep., 1024.

The principle stated is merely elementary and is extracted from the authorities cited, and although none of the facts are directly in point, some are closely related by analogy. The facts here present not a case merely of breach of contract or failure of consideration, for which equity by rescission would afford no relief (Moore v. Cross, 87 Texas, 561; Chicago, T. & M. C. Ry. Co. v. Titterington, 84 Texas, 223; Mayer v. Swift, 73 Texas, 369), but it is one where representations and promises are falsely and fraudulently made concerning the real consideration upon which the transaction is based, and the benefit therefrom to be received by the party who is induced to act by reason of such statements. And in such a case, as said in Pironi v. Corrigan, "The just expectations of the complainant have not been fulfilled, and that part of the consideration of the deed has failed. This conclusion leads to the setting aside of the conveyance."

There is between husband and wife a relation of trust and confidence; and the former in his business transactions with the latter, relating to her property interests, rests under the duty to make a true and full disclosure of the facts known, and to abstain from representations which are not true, and which are calculated to deceive, and which are of a nature likely to induce action to her injury. In such a case of abuse of confidence and duty, the wife, if she has sustained substantial injury, would have a right of action to rescind. Wiley v. Prince, 21 Texas, 639.

It only remains to be seen to what extent, if any, these principles and the relief provided, would apply to one shown by the evidence to be so situated as the appellant, the Rotan Grocery Company. They must have known when dealing for the purchase of the homestead, where the validity of the conveyance depends upon the separate acknowledgment of the wife, that it is not the mere previous negotiations that create the right acquired, but, as said in Davis v. Brewster, 59 Texas, 96, the real question is, with what intent did the husband and wife execute the instrument, which was not completed until the delivery; and from this it must follow that its status, as fixed and completed at that time, will determine the right of the purchaser. The deed as prepared and separately acknowledged, upon its face spoke the truth. The consideration was accurately stated as agreed to with the wife; and when she signed and acknowledged the instrument it became effective as a conveyance, and only binding upon her to the extent of the terms and conditions therein expressed. And thereafter these terms, in material respects, could not be changed by the husband and the purchaser without her consent.

While it is true that a purchaser dealing with the husband may, ordinarily, act upon the assumption that he has acted in good faith with the wife (Pierce v. Fort, 60 Texas, 469); yet to concede the right of the husband and the purchaser to consummate the sale of the homestead by virtue of terms and conditions materially different from those stated in the conveyance as executed and delivered, is virtually to destroy the force of the statute that requires the joinder of the wife, under separate acknowledgment, in order to create a

valid conveyance. And if it can be said that that part of the instrument which calls for a cash consideration is material, we see no reason why a change as to it should not come within the prohibition, as well as any other of its material terms. And if such is the case, the substitution of the other consideration by the husband and purchaser deprived the wife of the benefit she expected to receive in consenting to joining in the conveyance; and in such instance, it ought to be held that a purchaser who is a party to such a change takes subject to the fact that the change may result in an imposition upon the wife; or at least, in such a case, good faith and fair dealing should require from the purchaser information of the wife as to whether her rights by the change would be seriously affected. The deed being tested by its terms existing when delivered, the change thereof in the consideration to be paid, ascertained by the agreement between the husband and the purchaser, materially affected the interest of the wife; and the purchaser, a party to such a change, ought not to be relieved from its consequences by the assertion that he knew, and supposed the wife also knew, that the recital in the deed did not truthfully and correctly state the consideration as agreed to by him and the husband. The answer to this would be that the deed as delivered informed him that the wife intended it to have a certain effect. And it can not be said it was treating her fairly to ignore one of its important stipulations and give it an effect different from what the deed expressly required, without an inquiry from her. She having executed the deed with the recital in it of a cash consideration, that fact alone should have been sufficient to excite his inquiry as to whether the wife had consented that a different consideration could be received. In Connecticut Mut. Ins. Co. v. Smith, 22 S. W. Rep., 629, the Supreme Court of Missouri, in considering inferential facts on the question of notice, said:

"Notice in this connection does not mean positive information brought directly home to the parties sought to be charged. Anything that will put a prudent man upon inquiry is notice; and gross negligence in failing to make inquiry when the surrounding facts suggest the existence of others and that inquiry is to be made, is tantamount in the courts of equity to notice. Major v. Bukley, 51 Mo., 227; Leavitt v. LaForce, 71 Mo., 353; Roan v. Winn, 4 S. W. Rep., 736. This is the universally prevalent doctrine of courts of equity in all jurisdictions. 2 Pom. Eq. Jur., secs. 596 to 600. And actual notice may be inferred from circumstances and by reasonable deductions, Brown v. Volkening, 64 N. Y., 76. Courts of equity since their earliest foundation have always recognized that the still small voice of suggestion, emanating as it will from contiguous facts and surrounding circumstances pregnant with inference and provocative of inquiry, is as potent to impart notice as a presidential proclamation or an army with banners."

There was nothing up to the time of this delivery that appellee was aware of that would lead her to believe that her hopes and expectations, based upon the representations of her husband, would result in disappointment. If it may be conceded that the agent of the Rotan Grocery Company who negotiated with the husband the transaction and who prepared and wrote the deed, had no actual knowledge

that the wife did not know the real consideration, still, in preparing that instrument, he concealed under one of its material recitals a fact so important that if the instrument under his preparation had been made to speak the truth, the entire transaction would have failed, and the instrument would not have been executed by her. He knew, when this instrument came back to him delivered by the husband, that at that time only it became effective, and that it had been, according to its terms, explained to the wife by the officer who took her acknowledgment, and that when she finally became bound by the same that the false recital was calculated to deceive and mislead one not knowing the truth; and if the trial court or this court were so charitably inclined as to acquit him of any intent to so frame the deed as to deceive the wife and to conceal the true facts, it must be confessed that the result was the same, as she in fact was deceived to her disadvantage.

But the conclusion might properly be reached that the conduct of this agent is not necessarily limited by this charitable view, and doubtless the trial court, who had this witness before it, and was in a situation to judge of his credibility, did, in the light of the evidence, view his conduct with less leniency  The trial court, in weighing his evidence and in determining his credibility, may have properly discarded his explanation that the consideration as cash was so stated in the deed in deference to a custom or usage, and may have, under the inferences arising from the evidence, concluded that there was more of design and purpose of concealment in reciting a cash consideration than of mere accidental obedience to usage. It is a little strange and remarkable, to say the least of it, that the very fact that was concealed and suppressed and kept out of the deed is the fact which, if it had been stated, would have defeated the consummation of the transaction, and the very fact that was stated as the consideration inspired the confidence of the wife and led her to join in the conveyance. This may have transpired without design, purpose and understanding between the agent of appellant and the husband; but the trial court was justified in believing otherwise, and we entertain no disposition to differ with him in this conclusion.

Furthermore, the wife testified that she did not know that her husband was indebted to the Rotan Grocery Company, but that she knew that he was indebted to Scoggin; and, in effect, stated that she was informed and so understood, that after that debt was paid by the conveyance of the property, there would be left enough cash to purchase the new home. Now, if the agent of the Rotan Grocery Company, in preparing this deed, did not know of this arrangement and had not discussed the matter with the husband, it is a singular coincidence that he prepared the deed in accurate accord with the agreement between the husband and wife, and in keeping with the representations the former had made to her. The improbability of this being merely accidental, evidently suggested itself to the trial court; and he probably gave this conclusion some weight in determining the agent's connection with and knowledge of the true facts. In Pomeroy's Equity, 3d ed., vol. 2, sec. 762, this wholesome rule is stated:

"The most general statement of the doctrine describes the purchase

as one made in good faith for a valuable consideration and without notice. It is true that in most instances the want of good faith consists in the completion of the purchase after the party has been charged with notice, for such conduct is regarded by equity as constructively fraudulent. The requisite of good faith extends much further. A purchaser may part with a valuable consideration, may have no notice of any opposing claim, and yet lack the good faith which is essential to render his position a protection, and his defense available. It is an elementary doctrine, therefore, that, independently of notice and valuable consideration, any want of good faith on the purchaser's part, any inequitable conduct of his, such as fraud, committed in the transaction against his own immediate vendor or grantor, or a participation in an intended fraud against the creditors of his vendor or grantor, or his obtaining the transfer through misrepresentations or concealments which are inequitable, although not amounting to positive fraud, and the like, will destroy the character of a bona fide purchase, and defeat the protection otherwise given to it. The party claiming to be a bona fide purchaser must come into a court of equity with absolutely clean hands."

This text is cited with approval in Connecticut Mut. Life Ins. Co. v. Smith, 22 S. W. Rep., 623, and Schneider v. Sellers, 81 S. W. Rep., 126. This principle may find application to the facts and circumstances of this case, which show a change and concealment of the consideration.

In the disposition we have made of the question just discussed an affirmance results; and, while it is not necessary to discuss the other questions, there is one upon which the writer entertains a view so radically different from the way decided in Webb v. Burney, 70 Texas, 325, and Harrington v. McFarland, 1 Texas Civ. App., 291, that I deem it proper to state what I consider the reason and authority for a different rule.

It is seen that the consideration for the transfer and conveyance to Rotan Grocery Company, as agreed to by its agents and Mason, was a pre-existing debt due from the latter; and the two cases cited are to the effect that, when an attack is made by the wife on a conveyance from her on the ground that its execution was procured by fraud, the vendee who purchases without notice, will be protected, although the consideration to support the conveyance was a mere pre-existing debt. So far as my investigation has extended into an examination of the reported cases from the courts of this State and of others where the doctrine prevails that a pre-existing debt is not such a consideration as will support the title of an innocent purchaser without notice, the case of Webb v. Burney, stands alone, with the exception of Harrington v. McFarland, where the former case, in the language of the latter, was reluctantly followed. It is a settled question in this State that a pre-existing debt, while sufficient to support a transfer, is not a sufficient and adequate consideration upon which to base the assertion of bona fide purchase, without notice, of a superior title. Buckner v. Grigsby, 84 Texas, 330; Steffan v. Milmo Nat. Bank, 69 Texas, 513; McKamey v. Thorp, 61 Texas, 653. The latter case states as a reason, that this doctrine proceeds upon the principle that the creditor receiving

the conveyance divests himself of no right, and places himself in no worse situation than he would have been - if he had received notice of the prior title existing in the property in favor of a third party. He is treated as advancing nothing on the faith of his purchase, and as losing nothing if the apparent title of his vendor should prove worthless.

A purchaser in a case like the present, where the conveyance to him is assailed on the ground of fraud, is protected on the theory that he was a purchaser for value without notice; and I can see no reason why the consideration in such a case could be something of less value than would be necessary to protect a bona fide purchaser without notice of another and superior title. The equities and rights of the latter class of purchasers address themselves to the meritorious consideration of a court of equity, as much so as should be accorded to the former; and I see no reason why a different rule should apply in determining when the right or title of either should prevail. "The destructive effect of fraud upon any contract, conveyance or other transaction is so essential and far-reaching that no person, however free from any participation in the fraud, can avail himself of what has been obtained by the fraud of another, unless he is not only innocent, but has given some valuable consideration." 2 Pomeroy Eq., secs. 899 to 918.

As said by Turner, L. J., in Topham v. Duke of Portland, 1 Degex, J. & S., 517, 569: "I take it to be clear that no person, however innocent he may himself be, can, when there is no valuable consideration, derive a title under the fraud of another."

In Simpson v. Delehoyo, 94 N. Y., 194, the court in discussing the rights of an innocent purchaser in protection against fraud, says: "The fraud being established, it will be incumbent upon the plaintiff to show satisfactorily how he came by the mortgage and that he took the same for value; and, in order to give him the protection of the principles of law we lay down, the court must find, not only that he purchased the mortgage for value, but that he purchased it innocently and in good faith. 24 Am. & Eng. Ency. Law, 2d ed., 625; Baker v. Lever, 67 N. Y., 304; S. C., 23 Am. Rep., 117; Thomas v. Sweet, 63 S. W. Rep., 787; and Martin v. Robinson, 67 Texas, 381 to 382.

We find no error in the record and the judgment is affirmed.

*Affirmed.*