### BIRD v. BIRD et al. (No. 8171.)

(Court of Civil Appeals of Texas. Dallas. April 26, 1919. Rehearing Denied May 24, 1919.)

HUSBAND AND WIFE ☞171(1)—DEBTS OF HUSBAND—POWER OF WIFE TO MORTGAGE SEPARATE PROPERTY.

A married woman may mortgage or pledge her separate property to secure a debt incurred by her husband; her power in that regard not being impaired by the Married Woman's Act of 1913 (Vernon's Sayles' Ann. Civ. St. 1914, arts. 4621, 4622, 4624).

Appeal from District Court, Dallas County; W. F. Whitehurst, Judge.

Suit by Mrs. Myrtle Bird against Geo. H. Bird and another. From the judgment rendered, plaintiff appeals. Affirmed.

Etheridge, McCormick & Bromberg, of Dallas, for appellant.

Thomas, Milam & Touchstone, of Dallas, for appellees.

RAINEY, C. J. The statement of the case by appellant's counsel found in their brief is adopted by this court, and is as follows:

"Mrs. Myrtle Bird, then the wife of George H. Bird, instituted this suit against him and the First State Bank of Dallas on April 30, 1917, alleging that certain shares of stock which were a part of her separate estate had been pledged by herself and husband to the appellee First State Bank of Dallas to secure a debt due from her husband to said bank evidenced by a note for $5,930, as well as to secure the payment of a debt incurred for the benefit of her separate estate evidenced by a note for $800.

She alleged that she had tendered payment of the $800 note and demanded the return of her pledged property, but that the bank had refused to return it unless the other note was also paid, were threatening to execute a power of sale contained in the pledge, and would do so unless injunction issued. She prayed for an injunction restraining the sale, tendering the $800, with interest, and praying that the judgment be perpetuated on final trial. Appellant filed her first amended petition on April 6, 1918, praying in the first count as in her original petition and in the second count for a judgment against the First State Bank of Dallas, appellee, for conversion of her property. A temporary injunction issued. On April 18, 1918, the appellant filed her first supplemental petition, alleging the rendition of a judgment for divorce in her favor dissolving the marriage relation between her and the appellee George H. Bird. The appellee First State Bank of Dallas on April 15, 1918, filed its first amended answer, consisting of a general demurrer and certain special exceptions, a general denial, a plea that the pledged stock had been first pledged to Citizens' State Bank & Trust Company by the appellant and appellee George H. Bird, and that the appellant, on the advice of counsel, had voluntarily participated in the renewal of the loan to the First State Bank of Dallas and had signed a collateral contract in writing pledging her said stock to secure both of the notes described in the plaintiff's petition, and that she was thereby estopped to claim that the said property was not pledged to secure the larger note as well as the smaller note, setting up the terms of the pledge contract, a cross-action declaring on the notes, a plea declaring that the loans would not have been made except in reliance on the collateral security which was the separate property of the appellant, and praying judgment on the notes against the makers for the principal, interest and attorney's fees thereof, and for a foreclosure of the lien. The facts were stipulated between the parties. The case was tried to the court without a jury and he rendered judgment against George H. Bird in favor of the appellee First State Bank of Dallas, awarding a recovery of the principal, interest, and attorney's fees of both notes, with a foreclosure against the said George H. Bird and appellant of the lien and dissolving the temporary injunction. To the action of the court in dissolving the injunction and in adjudging the stock subject to a lien to pay the whole indebtedness recovered against George H. Bird appellant excepted, and is prosecuting the appeal in this court."

There is no conflict in the facts, and we adopt as our conclusions the findings of fact of the trial court as follows:

"(1) That on December 27, 1916, Mrs. Myrtle Bird and George H. Bird, then being husband and wife, made, executed, and delivered to the First State Bank of Dallas their certain promissory note in writing, signed by them, by the terms whereof they and each of them agreed and promised to pay to the bank or its order, on March 27, 1917, $5,930.28, with interest at the rate of 10 per cent. per annum from March 27, 1917, until paid, and 10 per cent. additional as attorney's fees in case said note be placed in the hands of attorneys for collection or collected by suit, for money loaned in that amount by the bank to George H. Bird.

"(2) That Mrs. Myrtle Bird, by the signing of said note, attempted to become surety of George H. Bird as to said debt for $5,930.28, that she voluntarily signed said note, and that no part of said debt was incurred for the benefit of the separate estate of Mrs. Myrtle Bird, nor was the said debt, in whole or in part, contracted for necessities furnished to Mrs. Myrtle Bird or her children.

"(3) That on the said 27th day of December, 1916, Mrs. Myrtle Bird owned in her own right as her separate property, to wit, 25 shares of the capital stock of the Moody Calculator Company, evidenced by certificate No. 68 issued in her name, and also 27 shares of the capital stock of the Planters' National Bank of Honey Grove, Tex., evidenced by certificate No. 219 issued in her name, and that on said date, as part of the loan described aforesaid, Mrs. Myrtle Bird, joined by her then husband, George H. Bird, executed and delivered to the First State Bank of Dallas a certain instrument in writing which purported to transfer, pledge, and hypothecate said stock to the said the First State Bank of Dallas, and to subject the same to the payment of the aforesaid indebtedness and to the payment of any other indebtedness which might become due to the said the First State Bank of Dallas by the said George H. Bird, Mrs. Myrtle Bird, or either of them; that said instrument so executed by Mrs. Myrtle Bird and George H. Bird evidenced, in substance, that the aforesaid shares of capital stock were pledged and transferred to said the First State Bank of Dallas for the purpose of securing the payment of the note aforesaid, and for any other indebtedness to the said the First State Bank of Dallas, and that in case of insolvency or failure in business said bank might, at its option, mature all indebtedness secured by the said pledged property, and that upon failure of the said makers to pay the debt evidenced by the note first hereinbefore described or any other indebtedness or to perform any agreement contained in said collateral pledge contract, said bank, without other demand, advertisement, or notices of any kind, might sell at public or private sale the whole or any part of the securities then held by it in pledge and transfer the same to the purchaser or purchasers thereof and receive the proceeds of the sale, and that the bank might buy at its own sale, the same as if a stranger, and apply the proceeds of the sale to the payment of said indebtedness, and further that the rights of the bank under said collateral pledge contract might be assigned to any assignee, and that the assignee shall enjoy all the privileges accruing to the bank thereunder; that, as a part of the same transaction, said stock was indorsed in blank by Mrs. Myrtle Bird and delivered to the First State Bank of Dallas, and has since remained and is now in its possession.

"(4) That on January 19, 1917, Mrs. Myrtle Bird and George H. Bird, then being husband and wife, made, executed, and delivered to the First State Bank of Dallas their certain promissory note in writing, signed by them, by the terms of which they and each of them agreed

and promised to pay to the First State Bank of Dallas, or its order, on April 19, 1917, $800, with interest at the rate of 10 per cent. per annum from April 19, 1917, until paid, and 10 per cent. additional as attorney's fees in case said note be placed in the hands of an attorney for collection or collected by suit, for money loaned in that amount by the bank to George H. Bird and to Mrs. Myrtle Bird; that all of said funds so borrowed and as represented by said $800 note were borrowed, and all of said indebtedness as represented by said note was incurred for the benefit of the separate estate of Mrs. Myrtle Bird.

"(5) That on said 19th day of January, 1917, Mrs. Myrtle Bird owned in her own right as her separate property, to wit, 87 shares of the capital stock of the Security National Bank of Dallas, Tex., evidenced by certificate No. 179 issued in her name, and that on said date, as a part of the loan transaction aforesaid, Mrs. Myrtle Bird, joined by her then husband, George H. Bird, executed and delivered to the bank a certain instrument in writing, which purported to transfer, pledge, and hypothecate said stock to the First State Bank of Dallas, and to subject the same to the payment ·of said indebtedness and to all other indebtedness in favor of the First State Bank of Dallas against George H. Bird and Mrs. Myrtle Bird, or either of them; that said instrument so executed by said Mrs. Myrtle Bird and George H. Bird evidenced, ·in substance, that the aforesaid shares of stock of the Security National Bank were pledged and transferred to the said the First State Bank of Dallas for the purpose of securing the note aforesaid and any other indebtedness to the said the First State Bank of Dallas, and that in case of insolvency or failure in business the bank might, at its option, mature all indebtedness secured by the said pledge, and that upon failure of the makers to pay the debt evidenced by the note last hereinabove described, or any other indebtedness, or to perform any agreement contained in said collateral pledge contract, the bank, without other demand, advertisement, or notice of any kind, might sell at public or private sale the whole or any part of the security then held by it in pledge and transfer the same to the purchaser or purchasers thereof and receive the proceeds of the sale, and that the bank might buy at its own sale, the same as if a stranger, and apply the proceeds of the sale to the payment of said indebtedness, and, further, that the rights of the First State Bank of Dallas under said collateral pledge contract might be assigned to any assignee, and that the assignee shall enjoy all of the privileges accruing to the bank thereunder; that, as a part of the same transaction, said stock was indorsed in blank by Mrs. Myrtle Bird and delivered to the First State Bank of Dallas, and has since remained and is now in its possession.

"(6) That the acts of the said Mrs. Myrtle Bird in signing the above-described pledge contracts and her acts in pledging her above-described personal property were voluntary on her part.

"(7) That in making the loan evidenced by said notes the First State Bank of Dallas relied on the pledge of the said personal property as collateral security and looked solely to the stock hereinbefore described for indemnification, payment, and reimbursement against loss as to all of the hereinabove described indebtedness; that the several amounts advanced and paid upon said loans by the First State Bank of Dallas herein were so advanced and paid solely upon the credit of the collateral pledged, and said money would not have been paid by the First State Bank of Dallas simply upon the execution of promissory notes by George H. Bird and Mrs. Myrtle Bird, or either of them.

"(8) That the indebtedness above described and all of it is wholly unpaid; that same has been placed in the hands of attorneys for collection and suit brought thereon, and that the 10 per cent. attorney's fees, as evidenced in said notes have accrued, and that said indebtedness and said contracts hypothecating said stock as aforesaid are owned wholly by the First State Bank of Dallas, and that the shares of stock described herein and covered by said hypothecation contracts is also held by said the First State Bank of Dallas, and that said bank claims the right to subject said stock to the payment of said indebtedness and all of it above described.

"(9) That at the time of the institution of this suit Mrs. Myrtle Bird and George H. Bird were still husband and wife; that since the institution of this suit Mrs. Myrtle Bird obtained a decree of divorce from George H. Bird, which decree has become and is final.

"(10) That, when Mrs. Myrtle Bird filed her original petition for suit herein, the same was presented to the judge of this court in an ex parte hearing, and a temporary injunction was granted in accordance with the prayer of her said original petition.

"(11) That neither the Citizens' State Bank & Trust Company nor the said the First State Bank of Dallas, nor the officers of either, knew the purpose for which the moneys advanced upon said collateral pledge as hereinbefore set out were expended."

The following stipulations were filed by the parties:

"It is agreed between the parties hereto as follows:

"(1) That the $800 note mentioned in the plaintiff's pleadings represents money borrowed for the use and benefit of the plaintiff's separate estate; that the other indebtedness mentioned in the plaintiff's petition represents money used by George H. Bird and is the individual indebtedness of George H. Bird, his wife signing the notes representing same as surety. The stocks pledged by plaintiff to defendant bank were and are her separate estate.

"(2) That the corporate stock described in the plaintiff's petition as being deposited with the defendant First State Bank was so deposited by George H. Bird and the plaintiff, each of whom jointly executed contracts of pledge thereto, as described in the plaintiff's petition, and that the pledge on her part was voluntary.

"(3) That, at the time the moneys representing said indebtedness were borrowed and the notes and collateral contracts described in plaintiff's petition were executed, plaintiff and George H. Bird were husband and wife, but since the institution of this suit a decree of divorce has been pronounced between them, and they are no longer husband and wife.

"(4) That no part of the indebtedness described in plaintiff's petition evidenced by the $800 note and the $5,930.28 note therein has been paid; that the said notes have been placed in the hands of an attorney for collection, and they provide for payment of 10 per cent. attorney's fees in such event; that the terms of the notes and the collateral contracts are substantially as described in plaintiff's and defendant's pleading and the exhibits thereto.

"(5) That in making the loans evidenced by said notes the defendant bank relied on pledge of the collateral security.

"(6) That neither the Citizens' State Bank nor the First State Bank nor the officers of either know the purposes for which the moneys advanced and the collateral hereinabove set out were expended.

"(7) That the several amounts advanced and paid by the banks herein were so advanced and paid on the collateral pledged, and said moneys would not have been parted from by the banks by the execution of promissory notes of either or both of them. Said banks looked solely to the stocks described for indemnification and reimbursement against loss."

The trial court's conclusions of law are as follows:

"(1) That the temporary injunction granted upon the ex parte application of Mrs. Myrtle Bird should be dissolved as not being warranted under the facts of this case.

"(2) That, as the indebtedness evidenced by the note for $5,930.28 of date December 27, 1916, due the First State Bank of Dallas, was not for the necessities furnished Mrs. Bird and her children, and was not for the benefit of her separate estate, she is not personally and generally bound thereon, and that no general or personal judgment should be rendered against her; that Mrs. Myrtle Bird was without legal capacity to bind herself personally as a joint maker of said note with her husband, either as principal with him or as surety for him.

"(3) That the hypothecation, pledge, and transfer of the certificates of stock in the Moody Calculator Company and in the Planters' National Bank of Honey Grove, Tex., explained and evidenced by the joint signatures of Mrs. Myrtle Bird and her then husband, George H. Bird, to secure the First State Bank of Dallas, in the repayment to it of the $5,930.-28 loaned by it, was and is a valid pledge, hypothecation, and transfer of said certificates of stock to the First State Bank of Dallas as security for such indebtedness, and that the lien in favor of the First State Bank of Dallas arising therefrom is valid and ought to be foreclosed.

"(4) That the indebtedness evidenced by the $800 note of date January 19, 1917, was for the benefit of the separate estate of Mrs. Myrtle Bird, and that she is generally and personally bound thereon, and that a personal judgment should be rendered against her thereon; that Mrs. Myrtle Bird possessed legal capacity to bind herself personally as a joint maker of said $800 note with her husband, either as principal with him or as surety for him; the proceeds being used for the benefit of her separate estate.

"(5) That the hypothecation, pledge, and transfer of the certificate of stock in Security National Bank of Dallas, Tex., explained and evidenced by the joint signature of Mrs. Myrtle Bird and her then husband, George H. Bird, to secure the bank in the repayment to it of the $800 loan by it, was and is a valid hypothecation and transfer of said certificate of stock to the First State Bank of Dallas, as security for such indebtedness, and for any other indebtedness due the First State Bank of Dallas, as evidenced by the terms of said pledge contract, and that the lien in favor of the bank resulting therefrom is valid and ought to be foreclosed, and the property subjected to the payment of all indebtedness due to the First State Bank of Dallas, including said $5,930.28 loan and said $800 loan.

"(6) That Mrs. Myrtle Bird shall take nothing by her suit against the First State Bank of Dallas; that the First State Bank of Dallas shall on its cross-action have personal judgment against George H. Bird for its debt, interest, and attorney's fees, and shall have foreclosure on its certificates of stock as against Mrs. Myrtle Bird and George H. Bird for its entire debt, principal, interest, and attorney's fees, and costs of suit; that the First State Bank of Dallas shall have personal judgment against Mrs. Myrtle Bird upon the $800 note, together with interest and attorney's fees."

One controlling question is presented for decision, and that is: Can a married woman mortgage or pledge her separate property to secure a debt incurred by her husband? We hold that this question should be answered in the affirmative. It was so held in the case of Hollis v. Francois, 5 Tex. 199, 51 Am. Dec. 760; Chief Justice Hemphell saying that the power of the wife to mortgage her separate property with the consent of the husband to secure his debts is undeniable. In Sampson v. Williamson, 6 Tex. 112, 55 Am. Dec. 762, the same rule was announced; also in Shelby v. Burtis, 18 Tex. 645.

In a long list of authorities since the Hollis Case supra, our Supreme Court has adhered to the doctrine therein announced; that is, that a married woman can mortgage her separate property to secure her husband's debts, down to the case of Bank v. Ferguson, 206 S. W. 923, wherein Chief Justice Phillips reviews the act of 1913 (Acts 33d Leg. c. 32 [Vernon's Sayles' Ann. Civ. St. 1914, arts. 4621, 4622, 4624]), and says:

"The power heretofore possessed by the wife to mortgage her separate property for the debts of the husband was not impaired by this act. It remains with her as aforetime."

This last decision is conclusive of the question. Mrs. Bird had the right to pledge her stock as was done in this case, and the judgment is affirmed.

Affirmed.