## SWANN v. ROTAN STATE BANK et al.*
### (No. 2101.)

(Court of Civil Appeals of Texas. Amarillo. June 13, 1923. Rehearing Denied Oct. 10, 1923.)

**1. Mortgages ⬤⇒38(1)—Deed held not intended as mortgage.**

Evidence *held* sufficient to sustain a finding that a deed executed by a married woman contemporaneously with the execution of a contract to reconvey on execution and delivery of her husband's note for the amount of his indebtedness to grantee was not intended as a mortgage.

**2. Husband and wife ⬤⇒202—Grantee held not charged with notice of duress by husband in execution of deed by wife.**

Vernon's Sayles' Ann. Civ. St. 1914, art. 4621, giving the wife sole management, control and disposition of her separate property, does not prohibit disposition through an agent, so as to charge a bank, not negotiating directly with her for a deed, with notice of any infirmity, or the fact of duress by the husband.

**3. Husband and wife ⬤⇒202—Cancellation of husband's debt consideration supporting defense of bona fide purchase.**

Cancellation of grantor's husband's debt to grantee is a sufficient consideration to support the defense by grantee of bona fide purchaser of wife's separate property as respects her claim that the conveyance was procured by fraud or duress exercised by her husband.

**4. Husband and wife ⬤⇒183—Wife may convey separate property for payment of husband's debt.**

A wife may convey her separate property in fee for payment of her husband's debt.

Appeal from District Court, Fisher County; W. R. Chapman, Judge.

Action by the Rotan State Bank against Bettie Swann and husband. Judgment for plaintiff and the named defendant appeals. Affirmed.

Stinson, Coombes & Brooks, of Abilene, for appellant.

Beall, Beall & Beall, of Sweetwater, for appellees.

HALL, C. J. The appellee bank brought this suit against Mrs. Bettie Swann and her husband, A. M. Swann, in the district court of Fisher county, in the ordinary form of trespass to try title, to recover two certain lots in the town of Rotan, and the reasonable rental value of the premises, alleged to be $30 per month. A. M. Swann made default. The appellant answered with a general denial, plea of not guilty, and by way of cross-action alleged under oath that on the 21st day of January, 1921, and for a long time prior thereto, she was the owner in her own separate right and estate of the lands and premises described in the plaintiff's petition, holding and claiming the same in fee simple; that she was a married woman, living with her husband, A. M. Swann, on the premises, using, enjoying and occupying the same as a homestead; that her husband, herself, and a minor child constituted the family; that the bank, its officers, and agents knew that said property constituted the homestead of the family, and also had notice that it was her separate estate. She admitted signing the deed under which the bank claims, but alleged that she was induced to sign and acknowledge the same under duress; that she afterwards found that the instrument so signed was an absolute deed, conveying her homestead and separate property to the bank for a recited cash consideration of $5,000; that as a part of the same transaction the bank officers executed an instrument in writing, agreeing to convey or cause to be conveyed unto her husband the said premises within 30 days, upon condition that he execute a note for $5,000, due 90 days from the date thereof, with Jim C. Loving and Don Loving, Sr., as his sureties, and that the said deed, with the said agreement to reconvey, constituted one instrument, and was tantamount to a mortgage upon the homestead, and void under the Constitution and laws of this state; that the conveyance so made by her was without consideration, in that it was made to cancel a pre-existing debt due from A. M. Swann to the bank; that because of the duress said instrument was never voluntarily executed or delivered by her nor by any person authorized by her to do so. She further alleged that no one ever negotiated with her for the purchase of the property, nor the execution of any conveyance, and that her husband represented that the transaction was a mortgage, and that he would have the right to redeem it; that she had never recognized said conveyance as valid, but had remained in possession of the premises ever since, and had never joined in any rental agreement thereof, and knew nothing of such agreement; that the notary who took her acknowledgment never explained the instrument to her and she did not understand its contents. By supplemental petition the appellee bank denied generally the facts set out in her cross-action, and alleged that the conveyance was accepted by the bank as a deed and not as a mortgage; that it had no notice of the alleged duress or defect in the acknowledgment, or any irregularity in the taking of said acknowledgment; that it was accepted in consideration of $5,000 owed by A. M. Swann, which sum was thereby discharged and canceled, and that the appellant was estopped by such deed and acknowledgment from setting up such duress and irregularity. It further alleged that the contract, by which it was agreed to reconvey the

property to Swann upon delivery of the secured note, was an option granted him to purchase; the conditions of which were never complied with by him. The case was tried to the court without a jury, resulting in a judgment in favor of the bank against appellant and her husband, for the title and possession of the property, and against A. M. Swann for $600 rents.

The substance of the court's findings of fact, briefly stated, is as follows:

That the two lots in controversy were conveyed by Geo. F. Loving and Clara Loving, the parents of the appellant, to her on the 14th day of May, 1917, by a deed reciting a consideration of $1, to them paid by A. M. Swann and wife, and the further consideration of the grantor's love and affection for the grantees, which deed was duly recorded. Up to January 20, 1921, A. M. Swann was the active vice president of the bank, at which time he resigned. On the 28th day of December, 1920, A. M. Swann was indebted to the bank in the sum of $12,500; $5,000 of said amount being evidenced by his promissory note and interest. On that day he made a draft on G. Ellis of Shreveport, La., in the sum of $5,000, payable to the order of the bank, placed said draft in the assets of the bank, and, without consulting any officer of the bank, took said note out of its possession. The draft was forwarded to Shreveport, and returned unpaid. That the said draft and the indebtedness which it evidenced was a pre-existing indebtedness of Swann to the bank, and that the deed executed by appellant, under duress, was given to discharge such indebtedness. The deed conveying the property is a formal conveyance, with a general warranty; recites a cash consideration of $5,000 paid, and is executed the 21st day of January, 1921, and acknowledged by both Swann and the appellant the same day.

The court further found that Swann delivered the deed to the bank on the morning of January 22, 1921, which was duly accepted by the bank in payment of the said $5,000 draft; that the draft was marked "paid" by the bank, and delivered to Swann, whereby the bank became the owner of the property described in the deed. The court further found that the property was the separate property of appellant; that no valuable consideration whatever passed, the only consideration being the love and affection of her parents for their daughter; that the said property was the homestead of the appellant and her husband, and that the officers of the bank knew that it was her homestead at the time of the execution and delivery of the deed; that the appellant knew at the time she executed the deed that the recited consideration of $5,000 was the payment of that amount due the bank. The court further found that she was under duress because of the threats of her husband, to the effect that if she continued to refuse to sign the deed he would leave her and leave the country, and that she would never see him again, and that he might kill himself; that he was going to flee the country in order to avoid prosecution by the bank, and that he actually got in his automobile and started away, with the avowed intention of carrying his threats into execution, and that because of all the circumstances she was completely under his control and domination. That neither the bank nor any of its officers knew anything of the facts constituting duress at the time of or prior to the delivery of the deed and the cancellation of the draft, nor until some three or four months thereafter. That the notary public who took appellant's acknowledgment to the deed did not explain the same to her, and that while A. M. Swann was physically apart from his wife "he was present in such duress." That the bank knew nothing about the irregularity on the part of the notary in taking appellant's acknowledgment. That they accepted the deed, and in good faith canceled the draft. That on the morning after delivery of the deed, to wit, January 22, 1921, A. M. Swann requested Guy Patterson and Mark Cave, the officials of the bank, to execute an instrument, dated January 21, 1921, the substance of which binds Patterson and Cave to convey unto A. M. Swann the property in question at any time on or before the 21st day of February, 1921, if Swann will deliver to them his note for $5,000, secured by the personal indorsement of Jim C. Loving and Don Loving, Sr. He further finds that these conditions were not complied with, and that Swann never attempted, in any way, to comply with the terms of the option given him by said instrument. That the deed executed on January 21st was accepted by the bank as an absolute conveyance of the property in full satisfaction of the $5,000 draft. That at the time of the deed, and long prior thereto, the property was the homestead of appellant, which was well known to the bank and its officials, and that appellant is still using, occupying, and claiming the same as her homestead at the time of the trial, and that she has never agreed to lease the property from the bank, and had no knowledge of the rental contract entered into by her husband.

The nineteenth assignment is as follows:

"I find that none of the officers of said bank dealt with the said Mrs. Bettie Swann in securing the execution of said deed in payment of said indebtedness, although they each and all knew it was her homestead at the time, and used and occupied by her as such, and were charged with notice that it was her separate estate. I find that none of the officers of said bank had any transaction with Bettie Swann with reference to said property, and that none of them ever talked to her about it, or had any negotiations with her to purchase it, in payment of such debt or for any other consideration. I find that the said Bettie Swann never in fact delivered said deed to said bank in per-

son, nor did she specifically authorize any one else to do so; however, after she had signed and acknowledged said deed under duress, as above found, her said husband, A. M. Swann, while she was still laboring under the same, took said deed into his possession, and delivered the same to the bank." ·

The court further found in substance that, about 60 days after delivery of the deed, Swann agreed with the bank to pay a reasonable monthly rental. That Swann has separated from and abandoned his wife, and that she had at all times after execution of the deed occupied the property; that the reasonable rental value of it is $30 per month.

[1] The first contention is that the deed executed by appellant and her husband is simply a mortgage, because the contract to reconvey upon the execution and delivery of the $5,000 note being contemporaneous with the execution of the deed deprives the latter of the character of a conveyance. As a proposition of law this is sound, but the facts do not support the contention. Guy Patterson, the cashier of the bank, and Mark Cave, one of the directors, testified that the parties connected with the bank understood the deed to be an absolute conveyance of the property; that there was a meeting of the directors with the bank examiner; that the examiner informed the directors that the $5,000 draft made by Swann upon Ellis had been returned unpaid; that the examiner asked the directors if they would be willing to accept a deed conveying Swann's home place in Rotan in payment of the $5,000 item; that after considering the matter they decided to accept it, although the property was not worth the amount of the debt; that afterwards Swann brought the deed to the bank, and the draft was marked paid, and delivered to him, and the property entered upon the real estate account as part of the assets of the bank. They denied specifically that the deed was accepted as a mere security, and Patterson and Cave testified that they gave the option later at the request of Swann, who said to them:

· "Of course, you are not acting for the bank in signing an agreement like you are, but I figure you two boys are square and honest, and will do the right thing, and we want the home, and will get the money, or give you a good note."

They further testified that they had no desire to prosecute Swann upon any criminal charge, and that no threats of that nature were made by any of the bank officials. They said they thought the deed was all right, and conveyed title, or they would not have accepted it. A. M. Swann did not testify, and this evidence is sufficient to sustain the court's finding that the deed was not intended as a mortgage.

[2] The next contention is that the Married Woman's Act of 1913, V. S. C. S. art. 4621 and amendments, required the bank to negotiate directly with the appellant, and since this was not done, but the negotiations were conducted through the husband, whom the evidence shows was not the agent of the appellant, the bank was charged with notice of duress and of the invalidity of the conveyance. We do not so construe the statute referred to. The article mentioned provides that:

"The wife shall have the sole management, control and disposition of her separate property, both real and personal."

It would be a strained construction to hold that she could not manage, control, or dispose of it through the medium of an agent. The record will probably not sustain a holding that appellant's husband was her agent in the transaction which resulted in the transfer of the homestead to the bank, but it is clear that he was not the agent of the bank. From the testimony quoted above it appears that the bank examiner, after looking over the condition of the bank's affairs, suggested to the officers of the bank the acceptance of the property in satisfaction of the item of $5,000 indebtedness. He seems to have made this inquiry upon suggestion of Swann himself. The reasonable inference from this testimony is that Swann was acting for himself in securing the deed, and in an effort to avoid the possibility of a prosecution for violating the banking laws. There is nothing in the statute, nor in the circumstances connected with this part of the transaction, which charges the bank with notice of any infirmity in the instrument, or of the fact of duress.

[3] The next contention is that the bank cannot claim to be a bona fide purchaser, for the reason that the only consideration paid was the cancellation of a pre-existing debt against appellant's husband. This is the difficult question in the case. The appellee insists that the judgment below is sustained by the cases of Webb v. Burney, 70 Tex. 325, 7 S. W. 841, and Harrington v. McFarland, 1 Tex. Civ. App. 289, 21 S. W. 116.

In the original opinion, which is withdrawn, we held that these cases did not apply. After a careful review of numerous cases, in addition to those cited by appellant, in which the defense of bona fide purchaser was interposed by the vendee, and denied upon the ground that crediting the purchase price upon a pre-existing indebtedness due from the vendor to the vendee was not such a consideration as would support the defense, we have concluded that we were in error. It is said in Webb v. Burney:

"It is contended by appellees that there was no valuable and adequate consideration for the deed, and that this would authorize the wife to impeach the certificate of acknowledgment.

There are expressions in some of the cases which indicate that there must be a valuable and adequate consideration paid by the grantee in order to prohibit the wife from impeaching the certificate. Waltee v. Weaver, 57 Texas, 571; Davis v. Kenedy, 58 Texas, 519. In Wiley v. Prince, 21 Texas, 640, Chief Justice Hemphill expressed doubt as to the applicability of the rule where the wife becomes a surety, by mortgage of her separate estate, for an antecedent debt of the husband. These questions have not, however, heretofore been discussed by our court. They have been mentioned in a general way, and the rule stated to be that where there is a valuable and adequate consideration paid by the purchaser, the certificate of acknowledgment by the wife is conclusive of the facts therein stated, where the purchaser has acted in good faith. It is true a precedent debt would not be considered a valuable consideration so as to make one an innocent purchaser ‘ as against a prior unrecorded deed. It is, however, a valuable right between the parties, and when they contract with reference to its discharge as a consideration, for property conveyed, as between the contracting parties, it would be a good and valuable consideration. A debt surrendered or discharged is a right lost on one side and a benefit conferred on the other. We do not believe our courts, in speaking of the necessity of a valuable consideration in connection with the inviolability of the officer's certificate of a married woman's acknowledgment, used the expression in the sense in which it is used in respect to innocent purchasers acquiring property without notice of a prior deed. * * * We therefore, conclude: (1) That the mere fact that Burney imposed upon his wife and by misrepresentations induced her to sign the deed, coupled with the fact (if it existed) that the notary did not comply with the law in taking her acknowledgment, could not affect the rights of Cole Bros. under the deed, they being ignorant of the facts; (2) that the precedent debt of Burney to Cole Bros. was a valuable consideration between the parties, and that no additional consideration need be shown to have passed to Mrs. Burney to give validity to the deed."

While it is true that Judge Simkins, in his work on Equity (2d Ed.) p. 647, criticizes the Webb-Burney Case, and Stephens, Justice, in Harrington v. McFarland, 1 Tex. Civ. App. 289, 21 S. W. 116, reluctantly follows the rule there announced, the Supreme Court refused a writ of error in the Harrington Case. In the case of Scoggin v. Mason, 46 Tex. Civ. App. 480, 103 S. W. 831, Fisher, Chief Justice, again criticizes the Webb-Burney Case, but the Scoggin Case did not reach the Supreme Court. We think that Rice v. Soders, 1 Posey Unrep. Cas. 615, and Alstin v. Cundiff, 52 Tex. 453, are in accord with the rule announced in Webb v. Burney. There are many cases in this state in which is announced the well-established rule that one who purchases property, crediting the amount of the purchase upon a pre-existing indebtedness, is not a bona fide purchaser, but after a careful review of all such cases we find

that they involve contests between such a purchaser and parties having equities or claims in no way connected with the transaction in which the vendee acquired the property. The above-cited cases are where the vendor and vendee are parties to the transaction, as in this case. The bank in the instant case had no knowledge of either the fraud or duress exercised by Swann, and upon which Mrs. Swann bases her right to hold the property. While the officers of the bank knew that the property constituted the homestead of Mrs. Swann and was probably her separate property, it accepted the deed in good faith. The property conveyed was worth less than the amount of its claim against Swann, but it surrendered the draft and released Swann from any further liability.

[4] It is settled by numerous authorities in this state that a wife may mortgage her separate property to secure the debt of her husband. Bird v. Bird (Tex. Civ. App.) 212 S. W. 253, and authorities there cited. For the same reason we think she may convey it in fee for the payment of her husband's debt.

Finding no reversible error, the judgment is affirmed.